No. 20,077.

NATHAN A. CLARK, *Appellant,* v. GEORGE SHOESMITH, as Executor, etc., and LYDIA J. CLARK, *Appellees.*

SYLLABUS BY THE COURT.

ACTION TO HAVE DEED DECLARED A MORTGAGE—*Conflicting Evidence.* The testimony examined, and support for the theories of both sides being found therein, the rule that this court can not weigh competent conflicting oral evidence is followed.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed April 8, 1916.   Affirmed.

*W. D. Vance, R. E. McTaggart,* both of Belleville, and *R. D. Sutherland,* of Nelson, Neb., for the appellant.

*Nelson J. Ward,* of Belleville, and *Park B. Pulsifer,* of Concordia, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to redeem from a deed which he prayed might be decreed a mortgage and for an accounting and to recover $8000 alleged to be due from the defendant executor.   After the former decision holding the petition good as against a demurrer (*Clark v. Shoesmith,* 91 Kan. 797, 139 Pac. 426), it was stated when the trial was reached that no judgment would be asked for any balance, that the plaintiff was asking simply for an accounting to determine whether or

not the mortgage had been paid in full and as to whether or not he was entitled to a reconveyance and interest in the land. The trial resulted in a general holding in favor of the defendants, no special findings being returned. The plaintiff appeals upon the theory that the trial court determined the case upon a misapprehension as to correct rules governing such a controversy, and upon the theory that a deed can not be declared a mortgage without direct evidence detailing all the terms and conditions of the agreement. In reality, however, the appeal practically presents the question: Was the general finding of the trial court supported by the evidence? It is also argued that the action was barred by the statute of limitations and by laches of the plaintiff.

The testimony of the plaintiff's wife was to the effect that in 1894, her brother, John Shoesmith, loaned her husband $4000, taking a note therefor, due in five years at 7 per cent interest, secured by mortgage on a half section of land in Republic county owned by the husband, who also had a school-land contract for forty acres adjoining in Jewell county. In addition to the loan, Shoesmith was to complete the payments for the school land and receive the patent therefor, the plaintiff, however, to retain the management and receive the proceeds. In 1898, in addition to the $4000 already mentioned, the plaintiff owed a $2000 mortgage on the land to one party and a $1500 mortgage to another, and his brother-in-law, Shoesmith, had paid out about $390 on the school-land tract; that John Shoesmith suggested taking a deed to the land instead of a mortgage and that he would hold it for a while, that plaintiff could manage the land just as he had been doing, and at any time Shoesmith would deed it back. The witness drew the deed, and having written the consideration of $1 she testified that Shoesmith remarked that as they had refused $9500 for the half section of land covered by the deed the consideration might be stated at that amount and it was so done; that Shoesmith said, among other things: "I will manage the farm and make it pay off and any time you want the deed back you shall have it." That he had idle money and would charge a lower rate of interest than those holding mortgages upon the land, and that he could be repaid from the proceeds of the farm; that he thought it advisable to sell the school land and

one eighty of the half section and apply it on the indebtedness. The deed for the Republic county land was not immediately delivered, but after having been retained a few months by the plaintiff was by him recorded and sent to Shoesmith. The plaintiff had a tenant on the land named Bothwell, who was farming it on shares, considerable stock was handled, and there was a large amount of personal property on the place. The witness further testified that after a time the relations between Shoesmith and Clark became strained, and that in about three years from the time the deed was made Shoesmith stated to her that he would deed the land back to her provided she would deed it to the children, reserving a life estate for herself and husband. She testified that upon reporting this declaration to her husband he expressed some dissatisfaction, but stated that it had better be left that way.

Bothwell remained on the farm and seems to have managed it to the satisfaction of Shoesmith. To Bothwell, Clark found fault with Shoesmith, claiming he had not treated him properly. Shoesmith kept a memorandum book in which he entered a detailed account of the transactions concerning the farm, which he nearly always referred to as "my farm." With the consent of the plaintiff's wife and by the aid of Bothwell the one eighty of the Republic county land and the school-land tract were sold. It appears that when the deed was made the land was burdened with debts, including accrued interest on the three mortgages, amounting to eight or nine thousand dollars and possibly more. There was an abundance of testimony that at that time it was worth only $20 an acre, or $6400. It has since become much more valuable. Shoesmith having died, his executor was sued, and the decedent, having willed one-half of the land to the plaintiff's wife she was joined as a defendant.

There was evidence entirely sufficient to establish the claim that the deed was taken on account of the indebtedness against the land, and while some of the testimony tends strongly to show an understanding and agreement at the time that upon repayment of the debt the land was to be reconveyed to the plaintiff, other evidence is about as clear that it was to be deeded back to whomsoever Shoesmith might choose. After receiving the deed Shoesmith in many ways treated the land

as his own, referred to it as his own, and seemed inclined to use it for the benefit of his sister, and seems early in the history of the transaction to have abandoned any possible intention to reconvey to Clark in whom he had no confidence as a business manager.

Bothwell testified that in February, 1899, the plaintiff told him he did not own the farm any more, that John owned it, meaning Shoesmith, that he turned it over to John to protect himself, that he expected to have it back inside of eighteen months or probably never; that Shoesmith in conversations frequently stated to Bothwell that so far as Mrs. Clark was concerned he would see that she was cared for but he would not help the plaintiff any more; that Mrs. Clark told the witness in 1905 that her husband thought he was going to get the land but that John was going to give it to her; that she had forgotten just what Shoesmith paid for it, but it was something over $10,000 that he had taken the farm at. In addition to various statements of Shoesmith and certain entries in his account book apparently recognizing his interest as that of mortgagee, there was other testimony showing statements by him indicating that he considered the land his own, including his will in which he devised to his sister one-half of the remaining 240 acres. The record is voluminous, and numerous items and incidents could be given in line with those already mentioned.

John Shoesmith was a wealthy man who was evidently attached to his sister, plaintiff's wife, and while her testimony as to the transaction in 1898 would of itself amply support the contention that the deed was intended as a mortgage, still much of the other evidence, and especially that showing the way John Shoesmith treated, mentioned and regarded the land and the complete and absolute dominion over it which he exercised up to the time of his death, all lend support to the conclusion of the trial court—so much support that without undertaking to weigh conflicting oral evidence we can not say that the decision is wrong.

The wife has already by the will received all or more than would accrue to her by the plaintiff's success in this action, while the plaintiff himself, who claims now that the evidence shows a payment of the indebtedness, permitted his brother-

in-law for some nine years to proceed in practical and open disregard and renunciation of any trust or obligation to reconvey to him; and in view of the entire evidence in the case, the result reached by the trial court must be allowed to stand. The judgment is therefore affirmed.