Martin v. Ott.

---

No. 24,738.

James E. Martin et al., *Appellants,* v. Fred W. Ott, *Appellee.*

SYLLABUS BY THE COURT.

1. Equitable Action—*Jury Called—Refusal to Submit Requested Special Questions not Error.* Where a jury serves in an advisory capacity only, no prejudicial error can arise from the trial court's refusal to submit special questions for the jury to answer.

2. Vendor and Purchaser—*Sale of Land—No Misrepresentation as to Acreage Shown.* In an action by a purchaser of a farm against his vendor for alleged misrepresentation as to its acreage, the evidence examined and held sufficient to sustain the judgment in favor of the defendant vendor.

3. Same.—*Certain Recitals in Deed Not a Warranty of Acreage Conveyed.* A recital in a deed of conveyance describing the property, viz: "Lots 1 and 2 in S. W. fractional quarter of 32-12-21 East, containing 65 acres more or less," merely serves to identify the property which is the subject of the grant, and is not a warranty of the acreage conveyed.

4. Same—*Findings Sustained by Evidence.* The trial court's special findings were sustained by the evidence.

5. Excluded Evidence—*Not Presented on Motion for New Trial—Not Reversible on Appeal.* Rule followed that excluded evidence not presented with a motion for a new trial forms no basis for reversible error.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed October 6, 1923. Affirmed.

*J. W. Parker,* and *G. A. Roberds,* both of Olathe, for the appellants.

*John J. Riling,* and *Edward T. Riling,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: ·This action arose over the purchase and sale of a small farm in the Kaw Valley near Eudora. There was a considerable shortage in the actual acreage from that described in the conveyance, and the main question was whether the farm was sold in gross or as a represented number of acres. The land was conveyed as "Lots 1 and 2 in S. W. fractional quarter of 32-12-21 East, containing 65 acres more or less."

Plaintiff alleged defendant's fraudulent and intentional misrepresentation that the farm contained 65 acres more or less, "meaning thereby . . . . that said land contained 65 acres subject to a possible shortage of two or three acres of land or that the acreage thereof might possibly be over the total of 65 acres"; that defendant well knew that it contained less than forty acres; that plaintiff in reliance on defendant's representations as to the acreage bought the farm for $12,000; that the farm in fact contained only 35.6 acres. These and less important facts were alleged in three counts—one sounding in tortious fraud, and another in mutual mistake and seeking rescission, and a third in damages for breach of warranty.

Defendant's answer traversed most of plaintiff's allegations and recited further—

"Said defendant told said plaintiff several times before he purchased said land that he did not know the number of acres in said farm; that the river had washed a portion of the farm away; that there was some accretion to the farm, and that he would have to judge for himself as to the number of acres in the farm, and further, informed said plaintiff that he would not sell said farm by the acre, and that if he wished the farm, he could have it at the price of twelve thousand ($12,000) dollars, $3,500 to be paid in cash, and $8,500 in the form of a note secured by a first mortgage on said property."

The testimony of plaintiff tended to show that a man in Eudora told plaintiff that the farm was for sale for $12,000. Plaintiff went and looked at it and then called on defendant. The latter stated his price. The two walked over the farm several times and plaintiff

asked defendant if the land was short and received an answer that it was short probably four acres, possibly five acres.

Plaintiff testified:

"He said he wanted $12,000 for the farm.  He wanted that for the farm as it lay.  I didn't buy it by the acre, I bought it on what he said. . . .  Don't remember whether Mr. Ott told me about the number of acres the first time I was there. . . .  I went to the river and back.  He showed me the jetties. . . .  I supposed the land had washed away to some extent. . . .  I relied on the statement of Mr. Ott as to the acreage of this land."

The evidence for defendant tended to show that the farm was sold in gross; that defendant had some time previously negotiated a sale of the farm to another person but it had not been consummated because of a shortage in the acreage, and that defendant had therefore carefully refrained from making any contract with plaintiff which would involve the question of acreage, and when plaintiff inquired about the acreage, defendant answered:

" 'Nobody knows and I don't know.  The river has been cutting in on it and it's short, but how much nobody knows, and I don't know.'  'Well,' he says, 'you say you want $12,000 for it?'  I says, 'if I sell it at all it will be $12,000 for the place just the way it lays.' . . .  He wanted to know if I knew how much the land was short and I told him I didn't and nobody else knew; told him it hadn't been surveyed since the shortage."

On cross examination, defendant testified:

"Q. You knew there was not anywhere near sixty-five acres, didn't you? A. I told him so.

"Q. You did?  A. Yes, sir; I told him it was short. . . .

"Q. You did know that there was not sixty-five acres, more or less, at that time, didn't you?  A. I told him so.

"Q. But you knew it, didn't you?  A. Sure, I did.

"Q. That there was practically or about sixty-five acres; did you believe it then?  A. No, sir; I knew better and I told him."

A banker acted as scrivener.  The parties had some discussion about what description should be inserted in the deed, and on the scrivener's suggestion the same recitals describing the property were inserted as those contained in the conveyance whereby defendant had acquired the property several years previously.

An advisory jury returned special findings which with little modification were adopted by the court.  The court found that defendant did not tell plaintiff the number of acres and informed him that he did not know the acreage; that he also told plaintiff that the river had possibly washed some of the acreage away.  Other findings read:

"It was agreed between the parties, possibly at the suggestion of the [scrivener] cashier, that the description used in the deed by which Ott acquired the farm should be used, which was done. . . .

"5. At the time Ott told the plaintiff that he did not know the acreage of the farm, he did, in fact, know the acreage, or 'approximately the acreage of the farm.

"6. The plaintiff believed Ott was telling him the truth when he said he did not know the acreage of the farm.

"7. Ott's intention in telling the plaintiff that he did not know the acreage of the farm was not for the purpose of deceiving or misleading the plaintiff, but was for the purpose of putting the plaintiff Martin in a position where he would have to determine for himself from a source other than Ott what the true acreage of the farm was, and whether or not he desired to buy the farm with the acreage it actually contained for the lump sum demanded by Ott. The farm actually contained about 36 acres."

The conclusions of law on which the judgment for defendant was rendered read:

"1. The description used in the deed from Ott to Martin was one of convenience and not of representation.

"2. No representations made by Ott to Martin entitle Martin to a rescission of his contract."

1. It is first contended that two special questions asked by plaintiff should have been submitted to the jury. Since the jury only served in an advisory capacity, the court's refusal to submit them could not possibly be error, as no controlling significance would necessarily attach to the jury's findings even if the questions had been submitted and answered favorably to plaintiff. (*Sharp v. Losee,* 109 Kan. 211, 220, 199 Pac. 94; *Kuhn v. Kuhn,* 112 Kan. 155, 160, 210 Pac. 343.) Furthermore one of the questions—whether defendant knew the farm contained only about 40 acres—was not an ultimate or controlling fact; and as to the other—whether defendant knew that the land contained much less than 65 acres— that was not in dispute. The defendant's testimony was : "I knew better and I told him."

2. The next contention is that the judgment should have been for plaintiff "on the ground of fraudulent misrepresentation." We do not think so. Certainly the trial court had to weigh the evidence and determine which of the two men were telling the truth. The trial court chose to believe the defendant's testimony rather than the plaintiff's, and it was clearly within its judicial province to discredit the testimony tending to show fraudulent misrepresentation

on the part of defendant.  Plaintiff's testimony as to the alleged misrepresentation was neither very positive nor very convincing. On the other hand the testimony of defendant and, indeed, some of the testimony of plaintiff, showed quite clearly that defendant would not consider a sale of the farm by the acre, or any sale based upon a discussion of the acreage.  He told plaintiff: "If I sell it at all it will be $12,000 for the place just the way it lays."  Even the plaintiff's testimony, in part, reads:

"Q. You did not buy it at any time by the acre, did you?  A. No, I didn't.

"Q. You bought it as a farm?  A. I bought it as a farm, same as any other.

"Q. As it lay, is that correct?  A. Yes, sir. . . .

"Q. Who told you there was sixty-five acres in it?  A. The old gentleman in Eudora [a stranger].

"Q. Did Mr. Ott ever tell you how much was in it?  A. He told me it was short of sixty-five acres.

"Q. Did he ever tell you it was a sixty-five-acre tract?  A. No, sir; he did not tell me there was sixty-five acres. . . .

"Q. The first visit and the second visit there he never said anything about the number of acres, that wasn't discussed, was it?  A. Well, I don't think it was, much. . . .

"You had your mind made up before you got to Ott's house, that you were going to buy this land for $12,000, didn't you?  A. Yes, sir."

3. In this connection it is also urged that the fact that the contract and warranty deed, after reciting the legal description in terms of land surveying, give the acreage as "65 acres, more or less," is conclusive on the parties.  Conclusive of what?  The identity of the property, nothing more.  It was not a warranty of the acreage. Moreover, the evidence showed clearly how the particular description came to be inserted in defendant's deed to plaintiff.  It was so written on the scrivener's advice, and because the defendant's title from his grantor was couched in the same language.  The trial court specially found that the insertion of such description was by agreement of the parties.  In *Armstrong v. Brownfield*, 32 Kan. 116, 121, 4 Pac. 185, it was said:

"The authorities agree that if the statement of quantity in a conveyance be matter of description only, the vendor, in the absence of fraud, is not bound to make good the deficiency, and the vendee is not required to surrender any excess.  It is also the rule that when the quantity of land is mentioned in a deed as part of the description, it will be rejected, if it be inconsistent with the actual area of the premises as ascertained by known monuments or other certain description, when the tract is definitely described and limited."

The law on the subject is really simple. Where a farm is sold as a represented number of acres, the vendor is liable for a deficiency in the acreage. (*Doner v. Deal*, 104 Kan. 793, 180 Pac. 766.) Where a farm is sold in gross, that is, for a lump sum regardless of the acreage, the vendor is not liable for any deficiency in the acreage except for fraud (*Kowing v. Reynolds*, 113 Kan. 317, 214 Pac. 427), which exception raises a question of fact, and in this case that question has been fairly determined against the plaintiff. (29 A. & E. Enc. of L., 627, 628; 27 R. C. L. 354, 355.)

4. Complaint is made of the trial court's finding No. 7. But the record shows it was based on competent evidence; therefore it must stand, together with the reasonable deductions which the trial court drew therefrom.

5. Error is urged in the rejection of evidence. What the rejected evidence might have shown was not disclosed on the motion for a new trial; consequently it is no basis for disturbing the judgment. (*The State v. Ball*, 110 Kan. 428, 432, 204 Pac. 701.)

Nothing further can be discerned in this case to justify discussion. The trial court found that the defendant did know the approximate acreage of the farm. The evidence to support that finding is not in the record—unless it is by inference that since the defendant was a farmer and had owned and cultivated the land for some years he was bound to have a reasonably accurate judgment as to its acreage. Be that as it may, it is perfectly clear that the statement of defendant to plaintiff that he did not know the acreage, "Nobody knows and I don't know," was not a representation of fact which in any degree induced the plaintiff to buy the farm.

Judgment affirmed.