No. 25,045.

Mrs. George Goode et al., *Appellants*, v. Dr. J. C. Cummings et al., *Appellees*.

SYLLABUS BY THE COURT.

Will—*Action to Set Aside—Undue Influence—Unsound Mind—Will Upheld.*
In an action to set aside a will on the ground of undue influence and that the testatrix was of unsound mind, the evidence held to support a general finding upholding the will.

Appeal from Sumner district court; Oliver P. Fuller, judge. Opinion filed February 9, 1924. Affirmed.

*Ed. T. Hackney*, of Wellington, for the appellants.

*W. W. Schwinn, E. J. Taggart*, and *John Bradley*, all of Wellington, for the appellees.

The opinion of the court was delivered by

Hopkins, J.: The action was one to set aside a will on account of undue influence and because the testatrix was of unsound mind. Defendants prevailed and plaintiffs appeal.

Complaint is made that the court erred in rejecting evidence, in finding generally for defendants and in overruling plaintiffs' motion for a new trial. What the rejected evidence was is not shown. It was not offered on the motion for a new trial, and, therefore, forms no basis for reversing the judgment. (R. S. 60-3004; *Martin v. Ott*, 114 Kan. 419, 424, 219 Pac. 275.) No new evidence was introduced at the hearing of the motion for a new trial. The trial court simply adhered to the judgment previously rendered. There remains, therefore, only the question whether the findings and judgment of the trial court are supported by sufficient evidence.

The will reads:

"Last Will and Testament of C. A. Davis, A Widow.

"Be it known that I, C. A. Davis, a widow, being on this 25th day of January, 1922, of sound mind and infirm of body, do make, publish and declare this as my last will and testament.

"After payment of expenses of my last sickness and funeral expenses, I will and bequeath all property of every kind, wherever situated, to my friend who has been most kind, to Dr. J. C. Cummings, and I appoint A. L. Miller as my executor.

"In Witness Whereof, I have hereto signed my name in the presence of F. A. Dinsmoor and Ethel Miller whom I have requested to witness this my last will.                                    C. A. Davis."

There was testimony showing that the testatrix, Mrs. Clarisa Davis, was a very aged woman, something over eighty years old; that she had, four years previous to her death, suffered an injury in an explosion of natural gas, and that she was never afterwards competent to do any business; that she stated that she had never been right in her head since the explosion; that about three weeks prior to her death, she fell and suffered an injury; that she was not, after that time, competent to make a will; that she was nervous and could not sleep nights; that she suffered a great deal during her last illness; that she did not have capacity to do business; that the will was written on Wednesday about noon, and that she died on Thursday night.

On the other hand there was testimony showing that she had capacity to make a will; that she said that Doctor Cummings had been kind to her and she desired to leave her property to him.

James Lawrence, a witness for defendants, stated that he had known Mrs. Davis since 1883; was her attorney; that she told him once she wanted him to draw her will and did not intend to give her property to her relatives. "Concerning a division of her property, I asked her if she had relatives in the East and if she had become reconciled with them. She said no, she would never give them a cent. She told me that more than once."

F. A. Dinsmoor, a witness for defendants, who drew the will for testatrix, stated among other things, that he arrived at her house on the morning of January 25; that he spoke to her, and then said, " 'Well, Mrs. Davis, I understand you wanted me to come over here and write your will.' She said, 'Yes, if there won't be any trouble about it.' I told her there never had been any way devised to keep people from litigation, 'but,' I says, 'my understanding of your condition, this is your property and you have a perfect right to give it anywhere you want to—make any disposition of it.' 'Yes,' she says, 'it is my property.' I says, 'You have no living husband, have you?' She said, 'No.' I says, 'No children?' She said, 'No.' I said, 'Have you any near relatives, such as brothers and sisters?' She says, 'No one that I care anything about, and no one that cares anything for me.' "

"Q. Did you ask her about what she wanted to do with the property—what provisions she wanted in the will? A. Yes, I asked her to whom she wanted to leave her property when she was done with it.

"Q. What did she say to that? A. She said, 'To him that has been good

to me.' I says, 'That is indefinite.' She says, 'Doctor.' I says, 'Doctor Cummings?' She says, 'Yes, he has been good to me.'"

Witness testified Mrs. Davis talked rather low and that his hearing is not acute, and that he had to get close to her in order to hear her distinctly, but that she appeared to hear him all right. Deceased stated she owned no other property than her home, also said she had money and that it was in Derrington's bank. She said she wanted Luther Miller for executor. Witness, after writing will, read it over to her, and she said that was what she wanted. She signed the will without any assistance. Witness thought her mind was all right, but she was sick, but complained of no pain. Answered all questions intelligently and talked rationally, made no irrational statements. No person suggested anything to put in will. "Was there at the house about two hours, finished writing the will about dinner time and got up to put on overcoat and Mrs. Davis said, 'You better stay for dinner, they are getting dinner out there.' On her request I took the will to the bank and put it in an envelope and left it. Think testatrix knew what property she had, what she was doing with it, and that she knew her relatives and that she intended to do what she did."

It would serve no useful purpose to further detail the evidence of a large number of witnesses for both parties whose testimony was heard and whose attitude on the stand was observed by the trial court. The general finding and judgment in favor of the defendants implies a consideration by the trial court of all competent evidence, and that the defendants met all burdens imposed upon them. It has been repeatedly held that where there is substantial testimony to support the finding or verdict of the trier of the facts, the finding or verdict will not be set aside.

From a general finding of the trial court it must be presumed that all controverted matters are established in favor of the party for whom the court finds. (*Mason v. Harlow,* 92 Kan. 1042, 142 Pac. 243; *Glenn v. Railroad Co.,* 94 Kan. 83, 145 Pac. 327; *Horine v. Hammond,* 94 Kan. 579, 146 Pac. 1144; *Samuel v. Thomas,* 95 Kan. 742, 149 Pac. 395; *Allen v. Snodgrass,* 95 Kan. 386, 148 Pac. 636; *Scott v. King,* 96 Kan. 561, 152 Pac. 625; *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731; *Clark v. Shoesmith,* 97 Kan. 733, 156 Pac. 694; *Miller v. Miller,* 113 Kan. 22, 213 Pac. 634.)

The plaintiffs contend that the will was vitiated by the provisions of section 22-214 of the Revised Statutes, which provide, among

other things, that: "In all actions to contest a will, if it shall appear that such will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall be affirmatively shown that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

While plaintiffs claim that Doctor Cummings was the confidential agent of the testatrix, and that Mr. Dinsmoor, who drew the will, was the doctor's attorney, we do not find testimony to support the contention. On the other hand, the general finding of the trial court for the defendants presupposes the placing of the burden of proof as the law required, that if it could be said to have shifted to the defendants on any issue, they successfully met every requirement.

"In a case tried by the court where both sides have availed themselves of an opportunity to introduce all their evidence, the question upon which rests the burden of proof is of no importance unless the ruling of the trial court upon that question indicates a misconception of the principles of law which control the case." (*Samuel v. Thomas,* 95 Kan. 742, 747, 149 Pac. 395.)

There was testimony that the testatrix wanted Dinsmoor to come over and write the will "if there would not be any trouble about it"; that, after it was read over to her, she said, "that was what she wanted," etc. The general finding and judgment of the court presupposes the finding of all the necessary facts to avoid the provisions of the statute to which reference is made.

Various propositions raised in the instant case were passed on in *Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634. It was there said:

"To destroy the validity of a will undue influence must amount to coercion, compulsion or constraint which destroys the testator's free agency and by overcoming his power of resistance obliges him to adopt the will of another instead of exercising his own. . . . When a contested will appears to have been duly executed and attested according to the statute of wills the law presumes it to be valid. This presumption must be overcome by proof, and the burden of proof rests upon whoever alleges it to be the product of undue influence or fraud. In all such cases the proof must be substantial, so that the judges of fact, having a proper understanding of what undue influence is, may perceive by whom and in what manner it has been exercised, and what effect it has had upon the will. . . . Suspicion, conjecture, possibility or guess that undue influence or fraud has induced a will is not sufficient to support a verdict to that effect. Power, motive and opportunity to exercise

undue influence do not alone authorize the inference that such influence has in fact been exercised." (Syl.)

In *Barnhill v. Miller*, 114 Kan. 73, Pac. 274, it was said:

"Where a contested will appears to have been executed and attested in accordance with the statute of wills, . . . the law presumes it to be valid . . . In order to possess the mental capacity to make a valid will, the law, based upon the experiences of mankind, does not require the testator to possess the ability to carry on complicated business matters. It is sufficient if he has mental capacity to know what property he has, and is able to make a disposition of it with understanding; that he knows the persons and objects of his bounty, and their condition and relation to him, and that he is able to dictate the terms of the will." (p. 74. See, also, *Hopper v. Sellers*, 91 Kan. 876, 139 Pac. 365; *Nordman v. Nordmark*, 100 Kan. 522, 164 Pac. 1062.)

The testimony in the instant case was conflicting. The trial court heard it—observed the attitude and demeanor of a large number of witnesses, and resolved the conflict in favor of the defendants. There was substantial testimony to support the judgment, and under the well-known rule this court will not disturb it.

The judgment is affirmed.