. No. 25,202.

FRANK C. BELL, LEO DENT et al., *Appellants*, v. HATTIE N. SKINNER, *Appellee*.

### SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Review—Findings of Court—Conflicting Evidence.* Rule followed that a trial court's determination of issuable and controlling facts will not be disturbed on appeal where such determination is supported by substantial though controverted evidence.

2. TRIAL—*Findings by Advisory Jury—Power of Court to Set Aside.* Rule followed that the trial court is not bound by the verdict and special findings of an advisory jury; and *held,* that where such verdict and findings are disapproved it is the trial court's duty to set them aside and to enter such judgment as its own interpretation of the evidence and determination of the facts will warrant.

3. WILLS—*Testamentary Capacity—Undue Influence—Evidence.* Record examined and no error discerned in the trial court's judgment upholding a will against an attack based on grounds of want of testamentary capacity and undue influence.

1. Appeal and Error, 4 C. J. § 2855.  2. Wills, 40 Cyc. p. 1341.  3. Id., 40 Cyc. pp. 1023, 1126.

Bell v. Skinner.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed October 10, 1925. Affirmed.

*John W. Adams, William J. Wertz, J. R. H. King* and *George L. Adams,* all of Wichita, for the appellants.

*S. B. Amidon, S. A. Buckland, H. W. Hart, Glenn Porter* and *P. D. Gardiner,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to set aside a will and the probate thereof on the alleged grounds that at the time of its execution the testator was incompetent to make it and that its making and execution were effected through the undue influence of the defendant, who was the principal beneficiary.

Plaintiffs were the three sons and a granddaughter of the testator, Lewis Bell. The will purported to dispose of real property of the value of $4,000, consisting of a house and some lots in Wichita and of some cash and personalty approximating a few hundred dollars. The will directed that a tombstone worth $100 should be erected at the grave of testator's second wife, and that a tombstone worth $230 to $250 should be erected to mark his own grave and that of his third wife, and that at his death his body should be brought to Wichita and buried by the side of his third wife; and his administratrix was specially charged to pay the cost of these directed expenditures. The will bestowed a legacy of $100 on a daughter-in-law residing in Indiana, and the litigants were remembered in the following items:

"ITEM No. VI.

"I am not unmindful of my three sons, hereinafter named, or my granddaughter, hereinafter named; but it is not my intention to will, give, devise and bequeath to any of them any share or part of my estate, other than the nominal sum of Five ($5.00) dollars as hereinafter designated, and provided:

"I, therefore, hereby will, give, devise and bequeath to my son, Lewis Bell, Jr., of the state of Oregon, the cash sum of five ($5.00) dollars; I hereby give, devise and bequeath to my son, Frank Bell, of Blackwell, Oklahoma, the cash sum of five ($5.00) dollars; I hereby will, give, devise and bequeath to my son, Oliver Bell, who is sometimes known as Frank White, of Marion, Kansas, the cash sum of five ($5.00) dollars; to Leo May Dent, my granddaughter, of Lubbeck, Texas, who is the daughter of my deceased daughter, Elizabeth McDougal, I hereby will, give, devise and bequeath the cash sum of five ($5.00) dollars."

To the defendant the testator devised:

"ITEM No. VII.

"All of the rest, residue and remainder of my estate, whether real, personal or mixed, I hereby will, give, devise and bequeath to Mrs. Hattie N. Skinner, of the city of Wichita, Sedgwick county, Kansas. It being my intention that after the payment of the bequests provided under items numbering 1, 2, 3, 4, 5 and 6, as hereinbefore provided, that the said Mrs. Hattie N. Skinner shall have and take all of the rest, residue and remainder of my estate of whatsoever nature and kind, or wheresoever situate. It being my intention and my own voluntary act, wish and desire that she be in this manner rewarded in part for the kindly care and assistance that she has shown me during the past five (5) or six (6) or more years. It being my intention that she have and take such residue and remainder of my estate in addition to any sum or sums that I have heretofore paid her as board, room rent or otherwise. And that such rent, residue and remainder shall be her sole and separate property to be used, or disposed of without let or hindrance."

Defendant's answer made certain admissions of matters alleged in plaintiffs' petition, and joined issue on the allegations of want of testamentary capacity and undue influence.

An advisory jury returned special findings of fact which were favorable to plaintiffs and against the defendant on all the controverted issues except No. 4, which reads:

"Question Four: . . . Did Lewis Bell execute the instrument in controversy on October 12, 1920, as his last will and testament and sign the same at the end thereof, and was said instrument then and there, in his presence, attested by three witnesses whose names are hereunto subscribed, and did said witnesses see the testator subscribe thereto or hear him acknowledge the same? Answer: Yes."

The jury's special findings were set aside by order of court, which held—

"That the answers returned by the jury to the questions propounded to it, with the exception of the answer to interrogatory No. 4, are unsatisfactory to the court and do not meet with its approval. It is the opinion of the court that the findings of the jury are against the weight of the evidence and should be set aside. Therefore the court does not adopt the advice given by the jury, but makes its own findings from the evidence."

The trial court then proceeded to make findings of fact, too long for reproduction here, but which, in part, recite:

"3. That . . . on the 12th day of October, 1920, at the time of the execution of the said will, Lewis Bell, although exhibiting symptoms of senile dementia, had full knowledge of the act that he was engaged in and of the property that he possessed, and an intelligent understanding of the disposition he desired to make of it, and the persons he desired should receive his

Bell v. Skinner.

property, and the capacity to recollect and apprehend the nature of the claims of those who were excluded by said will from participating in his bounty, and that at the time the terms of said will were indicated to said attorney and at the time said will was written, made and signed, the said Lewis Bell was of sound mind and memory and possessed testamentary capacity and was capable of making a valid disposition by will, of his property.

"4. That . . . the said Lewis Bell was not under any influence amounting to coercion, compulsion or restraint, which destroyed his free agency, and that the execution of the will in controversy of the deceased Lewis Bell was not procured by the exercise of undue influence on the part of Hattie N. Skinner. . . .

"7. That the said Lewis Bell left surviving him as his heirs-at-law, Leo Dent, of Lubbock, Texas, a granddaughter, age 25; Frank C. Bell, Blackwell, Oklahoma, son age 53; Oliver Bell, of Marion, Kansas, age 46, a son; and Lewis D. Bell, of Hillsdale, Oregon, age 55, a son. That the said Lewis Bell had not for many years been intimate with Lewis D. Bell, of Hillsdale, Oregon, or with Leo Dent, of Lubbock, Texas, and that he had been only fairly intimate with Frank C. Bell, of Blackwell, Oklahoma, and Oliver Bell, of Marion; that, for some reason, Oliver Bell, of Marion, Kansas, had not been going under the name of Oliver Bell, and had been going under the name of Frank White. That the relations between the testator and his heirs-at-law, particularly Oliver Bell and Frank C. Bell had been rather strained for a number of years, and that during the last few years of his life his heirs-at-law had paid very little attention to the testator. . . .

"9. That Mrs. Bell had been in bad health for a number of years, and that she was confined to her bed for a number of months prior to her death during the early part of the summer of 1920. That her illness was of a very serious character and that during the last weeks of her life she had no control of her bowels, and it was necessary for those attending upon her to use pads upon her body and to remove such pads and burn or otherwise destroy the same for sanitary reasons. That during the time of such illness of Mrs. Bell, Mrs. Hays and Mrs. Kunkle [daughters of Mrs. Bell] assisted in caring for her. That Hattie N. Skinner, the residuary legatee under the will, during the last illness of Mrs. Bell, was an almost daily visitor at the residence of Mr. and Mrs. Bell and assisted in nursing and caring for Mrs. Bell and attended to her wants and physical comfort in much the same manner as an own daughter would have attended to the same.

"10. That for five or six years prior to the death of Mrs. Bell, Hattie N. Skinner, the residuary legatee in said will was the friend and adviser of Mr. and Mrs. Bell; visited their homes weekly or oftener; assisted them in looking after their business affairs, and advised them in various ways. That Mr. and Mrs. Bell, during said years, depended upon the advice and aid of the said Hattie N. Skinner. . . .

"20. That the said Lewis Bell at various times expressed his displeasure and dissatisfaction with the conduct of his sons, Oliver Bell, sometimes known as Frank White, of Marion county, Kansas, and Frank Bell, of Blackwell, Oklahoma, and stated that they had neglected himself and his wife, and had left the care of himself and his wife to other persons and strangers, and ex-

pressed his appreciation of the care and assistance which had been given Mrs. Bell and himself, extending over a number of years, by Hattie N. Skinner, the residuary legatee in said will."

The trial court's conclusions of law were in accord with its findings of fact, and judgment was entered in favor of defendant.

Plaintiffs appeal, and while they set out formal specifications of error, they present their cause as if there still were issues of disputed fact to be determined by this court, whereas our function is to determine whether there was sufficient evidence to justify the findings and judgment of the trial court. That there was evidence presented to the trial court which would have sustained the issues contended for by plaintiffs, if that tribunal had given them greater credence and had attached a different significance to the relationship of the testator to his heirs and to his principal beneficiary, may readily be conceded, but that is altogether immaterial to a determination of this appeal. Even the appellants cite some of our many decisions, like that of *Hoff v. Hoff,* 106 Kan. 542, 189 Pac. 613, wherein the familiar rule was repeated and applied:

"That the determination of issuable facts is the exclusive province of the trial court, and such determination will not be disturbed on appeal when there is substantial though controverted evidence to support the trial court's findings and judgment." (Syl. ¶ 1.)

Appellants inveigh against the order of the trial court setting aside the verdict of the jury. They seem to overlook the fact that this was a case of an equitable character, where, if a jury is called at all, it serves only in an advisory capacity, and the court is not bound to defer to its judgment, and, indeed, in such cases the trial court cannot shift its own peculiar responsibility for the discovery of the truth of disputed facts by merely calling an advisory jury to its assistance. (*Medill v. Snyder,* 61 Kan. 15, 58 Pac. 962; *Hospital Co. v. Philippi,* 82 Kan. 64, 107 Pac. 530; *Hockett v. Earl,* 89 Kan. 733, 133 Pac. 852; *Houston v. Goemann,* 99 Kan. 438, 162 Pac. 271; *Cole v. Drum,* 109 Kan. 148, 152-154, 197 Pac. 1105; *Sharp v. Losee,* 109 Kan. 211, 220, 199 Pac. 94; *Martin v. Ott,* 114 Kan. 419, 422, 219 Pac. 275; *Fisher v. Rakestraw et al.,* 117 Kan. 441, 232 Pac. 605. See, also, excerpt from *Butler v. Milner,* 101 Kan. 264, 166 Pac. 478, quoted in *The State v. Frey,* 111 Kan. 798, 802, 208 Pac. 574.)

Counsel for appellants cite the rule applicable to a jury's verdict

Bell v. Skinner.

in an action at law, that it is conclusive if there is any evidence to sustain it (which is quite correct, subject to the qualification that the trial court must likewise be satisfied with it or a new trial must be granted), but that rule has no application to cases of an equitable character. It is the plaintiffs in this case who invoked the equity powers of the court to set aside the instrument purporting to be the last will and testament of Lewis Bell. And plaintiffs cannot invoke equity and at the same time reject the procedure by which equitable justice is ascertained and decreed.

In a careful perusal of plaintiffs' brief and the argumentative addenda to their "counter abstract," we do not find any point-blank contention that the record does not contain substantial evidence to support the judgment of the trial court. Such a contention would be futile, for notwithstanding the showing made in plaintiffs' behalf, there was ample testimony, professional and nonprofessional, to support the findings that the testator had testamentary capacity and was free from undue influence at the time of making his will; and in view of the indifferent relations which had long existed between Lewis Bell and his heirs and next of kin, and the kindly and intimate attitude of the defendant towards Bell and his wife, as well as her extraordinary considerateness and helpfulness to them during the last few years of their lives, there was nothing remarkable in the fact that she should be named as principal beneficiary and residuary legatee of the testator's estate. At all events, nothing suggestive of error is presented in this appeal, and the judgment is therefore affirmed.