No. 29,568.

JAMES RYAN, *Appellee*, v. J. L. JOHNS, *Appellant*.

(293 Pac. 475.)

Opinion filed December 6, 1930.

*R. P. Evans, George Clammer,* both of Manhattan, and *A. E. Crane,* of Topeka, for the appellant.

*Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action arose out of the sale of a farm adjacent to the Kansas river in Riley county.

In 1926 the plaintiff, James Ryan, sold the farm to the defendant, J. L. Johns, for a consideration of $19,000, of which price Johns paid $6,000 in cash, and gave his note for $6,000 payable in three years. The balance was to be paid by the purchaser's assumption of a mortgage for $7,000 which encumbered the property.

Some time after the transaction was completed and the money paid, and possession taken by the purchaser, plaintiff being in need of money induced defendant to make a payment of $1,500 on his note before it was due. When the note did fall due, defendant failed to pay the balance of $4,500 and interest, and plaintiff brought this action to recover thereon.

Defendant answered admitting the execution of the note, but as a defense thereto and cross action he alleged that in the negotiations leading up to his purchase of the farm plaintiff had represented that it contained 136 acres, less a railway right of way of 3.9 acres; that defendant had relied on plaintiff's representations of the acreage; that the farm in fact contained only 102.94 acres, whereby defendant was damaged in a sum equal to the balance due on his note.

Plaintiff's reply contained a general denial and alleged that he had sold the farm in gross with no reference or representation concerning its acreage. He also pleaded other matters of no present concern.

The cause was tried before a jury. The evidence adduced by the litigants tended to support their respective contentions. The jury returned a verdict for plaintiff for the balance due on defendant's note with interest, $4,762.24, and answered special questions to which space must be given:

"Q. 1. Was it understood by and between plaintiff and defendant at the time of the sale of the land in controversy that the quantity of land was 136 acres less right of way of railroad? A. No.

"Q. 2. Was it understood between the parties that plaintiff was selling 136 acres less the right of way of the railroad to the defendant for $19,000? A. No.

"Q. 3. Did the plaintiff positively state to the defendant upon inquiry of him from the defendant that there were 136 acres less the right of way in the tract of land in controversy? A. No.

"Q. 4. Did the defendant, at the time of purchasing the land in controversy,

believe there were 136 acres in the tract of land, including the right of way? A. No.

"Q. 5. Did the plaintiff believe there were 136 acres of land, including the right of way, at the time he sold it to the defendant? A. No.

"Q. 6. How many acres of land in the tract in controversy were there after taking out the land covered by the right of way of the railroad? A. Do not know.

"Q. 7. What price per acre did defendant pay plaintiff for the tract of land in controversy? A. No price per acre.

"Q. 8. Did the defendant believe there were 136 acres of land in the tract in controversy, including the right of way of the railroad, at the time he purchased the property? A. No.

"Q. 9. Was there 3.90 acres of land in the right of way of the railroad in the tract of land in controversy? A. Yes.

"Q. 10. Did the plaintiff, Ryan, positively state to the defendant, Johns, prior to or at the time of the sale of the land, that there were 136 acres in the farm or did said plaintiff state to the defendant that Miller, a former owner of the land, had told plaintiff that the old deed called for 136 acres? A. First part of question, no. Second part of question, yes.

"Q. 11. Was the consideration for the sale of the land in controversy arrived at by multiplying the number of acres by the price per acre? A. No.

"Q. 12. Was it agreed between the parties that the price of the land per acre was $143.90? A. No.

"Q. 13. Did plaintiff, Ryan, ever agree to convey 136 acres of land to defendant at $143.90 per acre? A. No.

"Q. 14. Did the plaintiff, Ryan, sell the farm in question to defendant Johns for $19,000 without reference to the price per acre or without reference to the number of acres? A. Yes.

"Q. 15. If you find in favor of the defendant on the claimed shortage, how much credit do you allow him for such shortage? A. We do not find in favor of defendant."

Judgment was entered for plaintiff, and defendant appeals. His first contention is that the undisputed evidence entitled him to a set-off. We do not think so. Indeed, a careful perusal of the abstracts reveals no evidence to prove the extent of the shortage— if there was a shortage. Defendant put a professor of civil engineering on the stand to testify to the acreage, and his testimony may be accorded full credence as far as it went. This witness made a plat of the farm, surveyed and computed the acreage of part of it, but omitted from his computation a considerable wedge-shaped tract in the south part of the farm bordering on the Kansas river, described in defendants' answer and cross petition as "Lot numbered four (4), in section eighteen (18), township ten (10), south of range nine (9), east of the sixth principal meridian"; and which appears

on the plat as "Lot 4, sec. 18." His testimony reads: "Did not estimate the number of acres in lot 4." It is therefore clear that the extent of the shortage, if any, was not established; consequently defendant failed to maintain that phase of his defense or cross action with sufficient evidence to warrant a judgment in his behalf. Passing that point, there was only one witness for defendant who testified that plaintiff sold him the farm on a represented number of acres, and that was defendant himself. His testimony reads:

"Q. I wish you would tell the jury as near as you can what was said by both parties at the time that the purchase of this farm was made. A. Ryan said he had a hundred-and-thirty-six-acre farm that his boy didn't want to farm and he wanted to sell it. . . .

"Q. What did Mr. Tracy [prospective tenant] say about the farm when he introduced you to Mr. Ryan? A. He says he has got a hundred-and-thirty-six-acre farm. . . . I believed what he said about the number of acres and relied on it. . . .

"Q. Ryan first said the price was $19,000, did he? A. Yes, sir, I asked him if he couldn't make it less and he said he couldn't afford to, that there was a hundred and thirty-six acres there minus the railroad. . . .

"Q. Did you ask him if he was sure it contained a hundred and thirty-six acres? A. No.

"Q. This farm was never priced to you at so much an acre by either Mr. Tracy or Mr. Ryan; neither one of them told you that you could have the farm at so much an acre, answer that question will you? No answer.

"Q. Did either one of them tell you that the price of that farm would be so much an acre? A. No, they never mentioned that; they mentioned a hundred and thirty-six acres though.

"Q. . . . Did either one of them tell you the price would be a certain amount per acre? A. No, but nineteen thousand dollars for a hundred and thirty-six acres would be— . . .

"Neither Ryan nor Tracy told me that the price of the farm would be so much an acre, but they mentioned 136 acres."

On the other hand, the plaintiff testified:

"Q. Did you make any statement as to the number of acres? A. No. . . .

"Q. Did you ever tell Mr. Johns that there was a hundred and thirty-five acres in the place? A. No, sir. . . .

"Q. At the time you sold this farm to Mr. Ryan did you know how many acres the farm contained? A. No, I did not.

"Q. What was the source of your information as to how many acres were in the farm? A. Only what Mr. Miller told me; he bought it for so much and sold it for the same. . . .

"Q. When you bought the land you bought it of a man by the name of Mr. Miller, you say? A. Yes, sir.

"Q. How many acres did you think you were buying? A. I don't really

know, I bought it for so much money, he said the old deed called for so much, a hundred and thirty-six acres. . . .

"Q. Did you or didn't you think there was a hundred and thirty-six acres out there? A. Well, I supposed there was. . . .

"Q. You sold it [the farm] to him for a hundred and thirty-six acres? A. I sold him the farm for so much money."

At one time, but whether before or after the contract or purchase and sale had been effected is not clear, plaintiff and defendant did have a conversation about the acreage. Plaintiff testified:

"A. I don't think anything was said there that night, but there was one night he asked about how many acres there was in the place and I told him that Mr. Miller told me that the old deed called for a hundred and thirty-six acres less the right of way. . . .

"Q. When was this conversation in which you told him that Mr. Miller said the old deed called for a hundred and thirty-six acres? A. The night he gave me the check for $500."

It thus appears that whether the farm was sold in gross, as in *Martin v. Ott,* 114 Kan. 419, 209 Pac. 275, or as a represented number of acres, as was done in *Maffet v. Schaar,* 89 Kan. 403, 131 Pac. 489, turned squarely upon the controverted matter of veracity between plaintiff and defendant, and the jury's verdict having the approval of the trial court conclusively settled that matter in favor of plaintiff.

Defendant inveighs against the trial court's refusal to give an instruction prepared by him touching the rights of the parties if plaintiff in negotiating the sale of the farm to defendant did represent that it contained 136 acres and if defendant relied thereon in purchasing it. But that matter was fully and fairly covered by instructions which the court did give, particularly Nos. 3 and 4, which read:

"3. You are instructed that where a seller makes positive representations to another in relation to a sale of property, and makes them as statements of facts, intending thereby to induce a purchase, and the purchaser buys the property in reliance upon the representations which are in fact untrue, the seller is liable for the damages sustained by the purchaser through such untruthful representations, although the seller may not have known that the representations were false when he made them, and although he may have no intention to deceive the purchaser.

"4. You are therefore instructed that if you shall find and believe from the evidence, by a preponderance thereof, that at or before the contract of purchase and sale of the land in question was entered into that the plaintiff made a positive representation that the land proposed to be purchased by the defendant from plaintiff contained 136 acres, intending thereby to induce defendant to purchase said land, and if you shall further so find and believe

from the evidence that said representation was in fact untrue, then it is not material in this case whether said plaintiff knew said representation was false at the time the same was made, but the making of such representation would constitute actionable fraud just the same as though the plaintiff had known such representation was false at the time it was made, and your verdict, if you so find and believe, should be in favor of the defendant."

Defendant also complains of instruction No. 5, which in substance told the jury that if plaintiff merely stated to defendant that when he himself had bought the farm some years previously his vendor had told him the old deed called for 136 acres, and if plaintiff did not state as a positive representation of fact at and before the contract of purchase was made that the farm contained 136 acres, plaintiff would be entitled to recover the balance due on the note. This was a correct statement of pertinent law covering that phase of the issues developed by the evidence.

Defendant also complains of the jury's answers to the special questions. He says "the jury paid no attention to the evidence." We have quoted above what the litigants themselves testified to, and we can only go part way with defendant in his criticism of the jury. The jury paid greater attention to plaintiff's evidence than to defendant's, which was their privilege. In his brief defendant says:

"The jury found, in answer to question 5, that the defendant did not believe there were 136 acres in the farm at the time he bought it. We call attention to the evidence cited above where he swore positively that he did believe there were that many acres."

To a similar contention this court has said:

"One trouble with this and other features of defendant's argument is the assumption that what its witnesses testified to must be accepted by this court as true, which, of course, is altogether incorrect." (*Fenn v. Kansas Gas & Electric Co.,* 118 Kan. 131, 136, 234 Pac. 77.)

See, also, *Finance Co. v. Seamans,* 129 Kan. 743, 746, 284 Pac. 422.

The other objections to the jury's special findings have all been carefully considered, but require no further discussion.

A painstaking search of the record and appellant's brief reveals nothing substantial upon which a reversal of the judgment could be predicated or justified. The judgment is therefore affirmed.

JOHNSTON, C. J., not sitting.