### JAMES ARMSTRONG v. B. H. BROWNFIELD.

1. DEED; *Words Merely Descriptive.* Where a deed describes the land as follows: "The south half of the northwest quarter ($\frac{1}{4}$), section two (2), township five (5), range eighteen (18), to contain 84 and $\frac{26}{100}$ acres, be the same more or less," *held*, that the words "84 and $\frac{26}{100}$ acres, be the same more or less," are merely descriptive.

2. EJECTMENT; *General Denial; Competent Evidence.* Where a general denial is filed in an action to recover the possession of real estate, it is not error to permit the defendant to show he purchased the land in controversy, and paid for it; that his grantor made a conveyance to him of certain real estate, and intended by such conveyance to convey the land in dispute; and that subsequently possession was taken of the land under the deed, as all of these things tend to show that the defendant, even if he has not the legal title to the land, is the equitable owner, and entitled to the possession thereof.

*Error from Atchison District Court.*

ACTION brought by *James Armstrong* against *B. H. Brownfield*, on March 30, 1883, in the district court of Atchison county. The petition alleges that the plaintiff is the absolute owner in fee simple of the north half of the northwest fractional quarter of section No. 2, in township 5 south, of range No. 18, east of the 6th P. M.; that he is entitled to the possession thereof; that the defendant unlawfully keeps him out of the possession of the south $4\frac{1}{4}$ acres thereof; and that said defendant has been in possession of the said $4\frac{1}{4}$ acres since March

26, 1883, receiving the rents and profits, to the damage of the plaintiff in the sum of $25. The defendant, on April 25, 1883, filed an answer to the petition, containing a general denial. Trial had at the June Term of the court for 1883, and judgment rendered for plaintiff. This judgment was set aside on motion, as provided by law, and the second trial of the action was had at the November Term of the court for 1883, a jury being waived. The court found and stated the conclusions of fact as follows:

"1. On November 12, 1858, James A. Craighead entered in his own name, at the United States land office at Kickapoo, the northwest quarter ($\frac{1}{4}$), section two (2), township five (5), range eighteen (18), in Atchison county, Kansas territory, said tract containing one hundred and sixty-four $\frac{26}{100}$ acres. The entry was made upon a land warrant for one hundred and sixty acres, which had been assigned to said James A. Craighead by Aaron M. Weddle, who also furnished the said James A. Craighead the money to pay for the four and $\frac{26}{100}$ acres, upon the understanding that the said Aaron M. Weddle was to have the extra four and $\frac{26}{100}$ acres.

"Afterward, on the same day, said James A. Craighead executed and delivered to the said Aaron M. Weddle a deed for the south half of the northwest quarter ($\frac{1}{4}$), section two (2), township five (5), range eighteen (18), to contain eighty-four and $\frac{26}{100}$ acres, be the same more or less, and on the same day, said James A. Craighead executed to the said Aaron M. Weddle a bond for a deed for the north half of the northwest quarter, section 2, township 5, range 18, containing eighty acres, be the same more or less.

"On September 20, 1859, said Aaron M. Weddle and wife mortgaged to one Pennington the south half of northwest quarter ($\frac{1}{4}$) section two (2), township five (5), range eighteen (18), to contain eighty-four and $\frac{26}{100}$ acres, more or less.

"On October 15, 1870, the heirs of said Aaron M. Weddle executed and delivered to John Dillon a deed for south half of northwest quarter ($\frac{1}{4}$), section two (2), township five (5), range eighteen (18), the same that was formerly owned by Aaron Weddle.

"On January 29, 1881, the heirs of John Dillon executed to the defendant, B. H. Brownfield, a deed for a three-fourths interest and a bond for a deed for a one-fourth interest in south half of northwest quarter ($\frac{1}{4}$); section two (2), town-

ship five (5), range eighteen (18), containing eighty acres, more or less, reciting that it was the interest inherited by the grantors, as heirs of John Dillon. Said instruments were all duly and severally recorded.

"2. Said quarter-section of land, containing one hundred and sixty-four (164) acres, was patented to said James A. Craighead July 16, 1860.

"On June 3, 1876, the county clerk of Atchison county executed to F. Neerman, in due form of law, a tax deed on a sale for taxes for north half ($\frac{1}{2}$) northwest quarter ($\frac{1}{4}$), section two (2), township five (5), range eighteen (18), containing eighty acres.

"On June 7, 1877, said James A. Craighead and his wife executed and delivered to John Beeby a quitclaim deed for north half ($\frac{1}{2}$) northwest quarter ($\frac{1}{4}$) section two (2), township five (5), range eighteen (18), containing eighty acres, more or less.

"On August 2, 1877, said F. Neerman and wife executed and delivered to said John Beeby a quitclaim deed for north half ($\frac{1}{2}$) northwest quarter ($\frac{1}{4}$) section two (2), township five (5), range eighteen (18); and on the same day said John Beeby and wife executed and delivered to the plaintiff, James Armstrong, a warranty deed for north half ($\frac{1}{2}$) northwest quarter ($\frac{1}{4}$) section two (2), township five (5), range eighteen (18), containing eighty acres, be the same more or less.

"Said instruments were all duly and seasonably recorded.

"3. It was the intention of said James A. Craighead, at the time he executed and delivered said deed of November 12, 1858, to Aaron M. Weddle, to convey to said Aaron Weddle the south 84 and $\frac{26}{100}$ acres of said quarter-section of land, the $4\frac{26}{100}$ acres being in consideration of said Aaron M. Weddle having paid for the same at the time of the entry.

"4. The lines bounding said section of land, according to the government survey, are as follows: The north line is 80 chains in length, the quarter corner being 40 chains from the section corner; the west line is eighty chains and 99 links in length, the quarter corner being 40 chains and 99 links south of the northwest corner, and 40 chains north of the southwest corner of said section; the south line is 80 chains and 32 links in length, the quarter corner being 40 chains and 16 links from the section corner; the east line is 81 chains and 29 links in length, the quarter corner being 40 chains north of the southeast corner, and 41 chains and 29 links south of the northeast corner of said section.

"The government survey shows the section to contain $649\frac{12}{100}$ acres.

"The north part of the section is also subdivided by a line 21 chains and 29 links south of the northeast corner, and 20 chains and 99 links south of the northwest corner of said section, and running across said section east and west, and in the northwest quarter $(\frac{1}{4})$ of said section there is a north-and-south line running north from last-named line, dividing the land into tracts of forty-two (42) and $\frac{5}{100}$ acres in northwest, and forty-two (42) and $\frac{21}{100}$ acres in northeast of said quarter-section.

"The north part of the northeast quarter of said section is in like manner divided into tracts of forty-two (42) and $\frac{36}{100}$ acres and forty-two (42) and $\frac{50}{100}$ acres respectively, the larger tract being in the northeast part of the quarter-section.

"5. In January, 1883, the defendant endeavored to have the boundary line between his land and that of plaintiff established by the county surveyor, by proceedings under the act of 1879, but the proceedings were irregular and void.

"6. The defendant has been in the occupation of the four (4) and $\frac{26}{100}$ acres of land in dispute, and receiving the rents and profits thereof, ever since April, 1883, and the value of the rents and profits during said time has been twelve dollars ($12) and $\frac{75}{100}$.

"The plaintiff is in the occupation of the north 80 acres of said quarter-section of land, but the defendant kept the plaintiff out of the possession of the four (4) and $\frac{26}{100}$ acres of land, now in dispute between them, which lies between the north 80 acres and the south 80 acres of said quarter-section of land.

"7. Under the usage of the government of the United States, in the sale and disposition of the public lands, if a person had applied for the preëmption or purchase of north half of northwest quarter, section (2), township five (5), range eighteen (18), he would have been compelled to pay for eighty-four (84) and $\frac{26}{100}$ acres of land, and his patent for north half $(\frac{1}{2})$ of northwest quarter $(\frac{1}{4})$, section two (2), township (5), range eighteen (18), would have included the two north sub-divisions of the quarter-section, of forty-two (42) and $\frac{5}{100}$ acres and forty-two (42) and $\frac{21}{100}$ acres respectively, being in all eighty-four (84) and $\frac{26}{100}$ acres."

Thereon the court made the following conclusions of law:

"1. By the conveyance of November 12, 1858, from James

A. Craighead to Aaron M. Weddle, said Aaron M. Weddle obtained the equitable title to the four (4) and $\frac{26}{100}$ acres of land in controversy.

"2. The plaintiff is not entitled to recover in this action.

"3. The defendant is entitled to judgment against the plaintiff for costs."

The plaintiff filed a motion for a new trial, which was overruled, and thereupon the court gave judgment in favor of the defendant. The plaintiff excepted, and brings the case here.

*E. W. Sargent*, for plaintiff in error.

*Hudson & Tufts*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The plaintiff and defendant claim title from one James A. Craighead, the patentee of the governmental subdivision of land known and described as the northwest fractional quarter of section 2, township 5, range 18, in Atchison county. This subdivision of land contains 164 and $\frac{26}{100}$ acres, by government survey. The plaintiff claims title to the north 84 and $\frac{26}{100}$ acres of land, as returned by the government survey. The defendant claims the south 84 and $\frac{26}{100}$ acres. There is a lap of 4 and $\frac{26}{100}$ acres, which is the land in controversy.

If the case turned wholly upon the construction of the deeds executed to the parties under whom the plaintiff and defendant claim, we would be compelled to hold that Craighead, by his deed to Aaron M. Weddle, conveyed 80 acres only; and therefore that the plaintiff is entitled to the 4 and $\frac{26}{100}$ acres described in his petition. The deed from Craighead to Weddle, executed November 12, 1858, described the land conveyed thereby, as follows: "The south half of the northwest quarter ($\frac{1}{4}$), section two (2), township five (5), range eighteen (18), to contain 84 and $\frac{26}{100}$ acres, be the same more or less." The foundation of the plaintiff's claim of title is a tax deed executed on June 3, 1876, by the county clerk of Atchison county, Kansas, to F. Neerman, on a sale

for taxes of the north half of the northwest quarter of section 2, in township 5, range 18, containing 80 acres, and a quitclaim deed executed on June 7, 1877, by James A. Craighead and wife to John Belz, for the north half of the northwest quarter of section 2, in township 5, range 18, containing eighty acres, more or less. As an actual fact, the two north quarter-quarters of this northwest quarter of section 2 contain more than 40 acres each; the northeast quarter contains 42 and $\frac{21}{100}$ acres; and the northwest quarter contains 42 and $\frac{5}{100}$ acres, making a total of 84 and $\frac{26}{100}$ acres, being the exact amount of land the plaintiff claims.

The authorities agree that if the statement of quantity in a conveyance be matter of description only, the vendor, in the absence of fraud, is not bound to make good the deficiency, and the vendee is not required to surrender any excess. It is also the rule that when the quantity of land is mentioned in a deed as part of the description, it will be rejected, if it be inconsistent with the actual area of the premises as ascertained by known monuments or other certain description, when the tract is definitely described and limited. Thus, in Iowa, a grantor deeded to a grantee "the southwest quarter of the northwest quarter of section 30, in township 89 north, of range 10 west, in Buchanan county," and recited in the deed, "being 40 acres." The tract conveyed, being on the western boundary of the township, was fractional, and actually contained 44 acres. It was held in that case that the deed describing the land by its congressional subdivision, passed title to the whole tract—the 44 acres. In other words, the number of acres mentioned in the deed did not control or limit the description. (*Ufford v. Wilkins*, 33 Ia. 110; *Powell v. Clark*, 5 Mass. 355; *Mann v. Pearson*, 2 Johns. 37; *Snow v. Chapman*, 1 Root, 528; *Wright v. Wright*, 34 Ala. 194.)

Washburn says:

"Sometimes a certain number of acres or quantity of land in the granted premises is intended to be guaranteed or assured to the grantee, and words to that effect have been held to amount to a covenant. The question in the numerous cases which have arisen, has been whether the reference to

quantity is a part of the description of what is intended to be granted, or intended as an assurance of the quantity mentioned. It may be stated generally, that where the number of acres is referred to as an estimated quantity, or coupled with the clause of 'more or less,' or is clearly a matter of description, it is not a covenant. So where the quantity is mentioned, in addition to the boundaries in the description of the estate, the quantity yields to the boundaries if they do not coincide." (3 Real Property, 3d ed., § 36$a$, 417.)

Under the authorities, we must therefore hold that the words in the deed of Craighead to Weddle, "to contain 84 and $\frac{26}{100}$ acres, be the same more or less," are simply descriptive, and the deed describing the land by its congressional subdivision merely passed title to Weddle of the south half of the northwest quarter of said section two, notwithstanding it was recited in the deed as "84 and $\frac{26}{100}$ acres, be the same more or less."

The court, in its conclusion of law, decided, however, that Weddle obtained an equitable title to the 4 and $\frac{26}{100}$ acres of land in controversy, and this conclusion we think is not erroneous. Weddle paid for the 4 and $\frac{26}{100}$ acres of land, and when Craighead executed his conveyance to him, of November 12, 1858, it was his intention to embrace therein the said 4 and $\frac{26}{100}$ acres. The parties understood that by describing the land in the deed as 84 and $\frac{26}{100}$ acres, the conveyance transferred the title of all of said land now claimed by the defendant. They thought at the time that the quantity recited in the deed was of the essence of the contract. The deed to Weddle was the prior conveyance; the 4 and $\frac{26}{100}$ acres of land were actually paid for at the date of such conveyance; possession was taken under the purchase and deed; and it does not appear from any finding that the plaintiff, or any prior grantor of his, ever had possession of said 4 and $\frac{26}{100}$ acres, or ever claimed any possession before the institution of this action. The failure of the deed to embrace the said 4 and $\frac{26}{100}$ acres cannot defeat the claim of the defendant, as he purchased all the interest formerly owned by Aaron M. Weddle. As the latter was the equitable owner thereof, the defendant is likewise such owner.

School District v. School District.

There was no error on the part of the district court in permitting evidence to be introduced to show that Weddle purchased the land in controversy and paid for it; that his grantor intended by the conveyance of November 12, 1858, to convey the same to him; and that possession was taken of the land, as all of these things tended to show that the defendant is the equitable owner, and entitled to possession thereof. (*Hall's Heirs v. Dodge,* 18 Kas. 277; *Wicks v. Smith,* 18 id. 508; *Clayton v. School District,* 20 id. 256.)

The judgment of the district court must therefore be affirmed.

All the Justices concurring.