No. 44,082

C. W. Pickering and Lillian Hubbard Pickering, *Appellees*, v. Zoe L. Hollabaugh, Jr., Executor of the Estate of Zoe J. Hollabaugh, Deceased, and Mary L. Hollabaugh, *Appellants*.

(401 P. 2d 891)

Opinion filed May 15, 1965.

*William R. Smith* and *H. E. Jones,* both of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, Wm. P. Thompson, Jerome E. Jones, Robert J. Roth* and *Robert J. O'Connor,* all of Wichita, were with them on the briefs for the appellants.

*A. D. Weiskirch,* of Wichita, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This was an action to enforce specific performance of an agreement to exchange real property.

On October 11, 1961, Zoe J. and Mary L. Hollabaugh, husband and wife, entered into an agreement with C. W. and Lillian Hubbard Pickering, husband and wife, for the exchange of real properties. The contract read in part as follows:

"First parties agree that they will, by a warranty deed and bill of sale, convey to second parties the Cubana Apartment Building, including the business building upon the ground floor, . . . It is understood and agreed that the street address of said Cubana Apartment Building is 237 and 239 South Main Street in the City of Wichita, Sedgwick County, Kansas, and the exact legal description covering said property shall be used in the deed.

. . . . . . . . . . . . . . .

"Second parties agree to transfer to first parties approximately 221 acres, located in Section One (1), Township Nine (9), Range Seven (7) East, Pottawatomie County, Kansas, including water, shore and access easements to Tuttle Creek Dam and Reservoir and, including grantors and previous owners of said described real estate reversionary and preferred tenant rights growing out of and appertaining to the creation and erection of what is described as the Tuttle Creek Dam and Reservoir by the United States Government and any of its agencies or divisions. This being an approximate acreage of 221 acres, but it is understood and agreed that there may be a slight variation of more or less than the definite acreage of 221 acres, but this is definitely understood to be all the real property owned by second parties in the above described Section 1.

. . . . . . . . . . . . . . .

"It is further understood and agreed that should possession be taken before final approval of title that the mere taking thereof shall not release either party from meeting title requirements which may be reasonably required to perfect a merchantable title."

It became apparent after a time that the defendants did not intend to comply with the agreement and an action was brought by the Pickerings to enforce specific performance.

We will be unable to supply any dates as the record sets out an amended petition, an answer, a reply, a stipulation and a motion for judgment without giving any dates as to when such instruments were filed or served.

The substance of the petition was to the effect that plaintiffs are ready, willing and able to comply with the terms of the contract but that defendants refused to execute a conveyance and abide by the terms of the agreement.

The answer denied that the plaintiffs had performed any of the conditions imposed upon them by the agreement and denied that they were able to perform. It was further alleged that the plaintiffs were guilty of laches in the prosecution of the action.

The reply was a general denial.

The parties entered into a stipulation, the material parts of which will be considered later.

The defendants then filed a motion for judgment on the pleadings and the stipulation for the reason that it was shown plaintiffs were unable to perform. The motion was overruled.

Zoe J. Hollabaugh died November 6, 1963, and his executor was substituted as a defendant in the action.

The case was tried to the court which made findings of fact and conclusions of law and decreed specific performance of the contract.

Defendants have appealed.

Appellants first contend that the court erred in overruling their motion for judgment on the pleadings and stipulation.

Appellants support their contention with the argument that the appellees agreed to convey approximately 221 acres located in section 1 (more specifically described):

". . . This being an approximate acreage of 221 acres, but it is understood and agreed that there may be a slight variation of more or less than the definite acreage of 221 acres, but this is definitely understood to be all the real property owned by second parties in the above described Section 1."

They further suggest that it was stipulated:

"The parties further stipulate and agree that the records of the County Clerk of Pottawatomie County indicate that C. W. Pickering and Lillian Hubbard Pickering, own lands in Section 1, Township 9 South, Range 7 East, and that said lands contain 172.78 acres.

"There is attached hereto Xerox copy of a letter written by Robert W. West, who estimates the acreage from the description only without actual survey, to be 199.25 acres."

The appellants argue that the stipulation establishes the fact that the appellees were not in position to deliver the acreage covered by the agreement.

We are not informed on what ground the trial court overruled the motion for judgment. It must be assumed that it either felt that the stipulation as to the acreage was ambiguous or that the discrepancy in the acreage was immaterial at that stage of the proceeding. Either ground would have been valid.

The stipulation tended to confuse rather than make definite the amount of acreage. According to the stipulation the records of the county clerk indicate the Pickerings owned 172.78 acres in section 1, while the surveyor estimated the acreage, from the description only, to be 199.25 acres. The stipulation left much to be explained.

It may also be suggested that the phrases "approximate acreage of 221 acres" and "more or less" constituted words of description which merely served to identify the property owned by the appellees in section 1. The words were not a warranty of the acreage conveyed. The land could only be described accurately by metes and bounds because of the Tuttle Creek Reservoir. The scrivener was attempting to reach all of the appellees' land in section 1.

We had the same question before us in *Martin v. Ott*, 114 Kan. 419, 219 Pac. 275. In the Martin case the land was conveyed as "lots 1 and 2 in S. W. fractional quarter of 32-12-21 East, containing 65 acres more or less." The farm in fact contained only 35.6 acres. It was held:

"A recital in a deed of conveyance describing the property, viz: 'Lots 1 and 2 in S. W. fractional quarter of 32-12-21 East, containing 65 acres more or less,' merely serves to identify the property which is the subject of the grant, and is not a warranty of the acreage conveyed." (Syl. 3.)

The same rule was announced in *Brewer v. Schammerhorn*, 183 Kan. 739, 332 P. 2d 526, at page 745 of the opinion:

"The words 'more or less' when used in a deed with reference to the description of the property are to be construed with reference to the particular circumstances involved. Generally they relieve a stated distance or quantity of the attribute of exactness. Further, such words generally indicate a sale in gross, unless the words are qualified or defined. Such words negative the idea of exact knowledge and import that the actual quantity is a mere approximation to that named, but allow for a reasonable excess or deficiency. (See *Armstrong v. Brownfield*, 32 Kan. 116, 4 Pac. 185; *Maffet v. Schaar*, 89 Kan. 403, 131 Pac. 589; *Martin v. Ott*, 114 Kan. 419, 219 Pac. 275; 1 A. L. R. 2d, § 30, p. 89; 26 C. J. S., Deeds, § 102b, p. 892; 91 C. J. S., Vendor & Purchaser, § 93c, pp. 978, 979, and cases cited therein.)"

If there was any ambiguity because of the language used it was clarified by testimony covering the particular circumstances involved and presented in connection with other issues to be discussed.

The appellants next contend that evidence of statements made by Zoe J. Hollabaugh, now deceased, should have been excluded

as hearsay. Zoe J. Hollabaugh died after the contract was made and before the case came to trial. During the trial C. W. Pickering, one of the appellees, was permitted to testify:

"We talked over the income of the Cubana Apartments and we talked over the income of the pasture and Mr. Hollabaugh said he was interested more in development of the Tuttle Creek property than in the pasture."

The appellants contend that the testimony was hearsay. However, declarations against interest have always been one of the recognized exceptions to the hearsay rule. Admissions against interests are always admissible if otherwise competent and presented by a competent witness. G. S. 1949, 60-2804 which prohibited a person from testifying respecting transactions or communications had personally with a person since deceased was not incorporated into the new Code of Civil Procedure and has therefore been repealed. This was the only prohibition against a party to a transaction with a person since deceased testifying as to his statements or declarations. In *Hurley v. Painter,* 182 Kan. 731, 324 P. 2d 142, we stated at page 733 of the opinion:

". . . Moreover, in the exhibit, Ellen by declaring that she had given all her property to her son disavowed her proprietary interest in the property. The note was therefore admissible under the well-recognized declaration against interest exception to the hearsay rule. In *Mentzer v. Burlingame,* 85 Kan. 641, 643, 118 Pac. 698, we said:

"'The declarations of a deceased person made against his pecuniary or proprietary interest concerning facts within his knowledge which are material and relevant to the issue, are admissible in evidence . . . (1 Ell. Ev. § 434 *et seq.*; 1 Greenl. Ev., 16th ed., §§ 147-149; 1 Wharton, Ev., § 226; 2 Wig. Ev. §§ 1455-1470.) The admissibility of the evidence rests upon the improbability that one will admit that which it is for his pecuniary interest to deny.'" (See, also, 31A C. J. S., Evidence § 205, p. 575.)

Testimony such as we are now considering is specifically made admissible by the new Code of Civil Procedure. K. S. A. 60-460 provides in part as follows:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . . . . . . . . . . . . .

"(*j*) *Declarations against interest.*
Subject to the limitations of exception (*f*), a statement which the judge finds was at the time of the assertion so far contrary to the declarant's pecuniary or proprietary interest . . . that a reasonable man would not have made the statement unless he believed it to be true; . . ."

Appellants next contend that confidential communications between Zoe J. Hollabaugh and his attorney were improperly admitted in evidence and should have been excluded as privileged.

Mr. Walter F. McGinnis, an attorney residing at El Dorado, Kansas, prepared the contract in controversy. He testified that he did not know whether it was Mr. Zoe J. Hollabaugh or his broker that first talked to him, it was very possible the broker. He was not sure who gave him the information that went into the contract. The testimony to which the objection is addressed was summarized as follows:

"There's a provision in the contract that the acreage was approximately 220 acres but it was understood and agreed that there would be slight variation either more or less. It was definitely understood that it was to be all of the real estate owned by the second party in Section 1. It was talked to me in my presence that they couldn't set the exact number of acres. They had no way of knowing at that time as I understood it. They said put it in there some way so there could be a variation and that is the reason it is that way.

"The reason for the variation was due to the number of acres in the government easements. . . ."

We find nothing in the record to indicate a confidential communication. It would appear that the attorney was acting as a mere scrivener in drafting the contract. There was no basis for applying the lawyer client privilege as that rule is announced in K. S. A. 60-426. In *Cunningham v. Cunningham,* 107 Kan. 318, 191 Pac. 294, we stated at page 323 of the opinion:

"One of the contentions urged by the plaintiffs is that the testimony concerning communications between the attorney and client was incompetent under section 321 of the civil code (Gen. Stat. 1915, § 7223). We think the objections to his testimony and the motion made to strike out were properly overruled. In addition to the fact that many of the things the attorney testified to were corroborated by other testimony, it has been decided that an attorney who acts as a scrivener in the preparation of a contract regarding property or in the drawing of a will may testify to communications with the deceased at the time the deed or will was prepared or executed, because under such circumstances the communications are not privileged. (*Black v. Funk,* 93 Kan. 60, 143 Pac. 426; *Sparks v. Sparks,* 51 Kan. 195, 32 Pac. 892; *Lumber Co. v. Cox,* 94 Kan. 563, 566, 147 Pac. 67; 4 Wigmore on Evidence, § 2297.)

"In *Durant v. Whitcher,* 97 Kan. 603, 156 Pac. 739, the rule was applied that 'in an action to set aside a will the lawyer who drew it may testify to the conversation had at the time between himself and the testator' (syl. ¶ 1), and also that the scrivener and subscribing witnesses of a will are competent witnesses as to the mental condition of the testator."

In *Cranston v. Stewart*, 184 Kan. 99, 334 P. 2d 337, we held:

"In order for a communication from a client to his attorney to be confidential and to impose upon the attorney the duty of not disclosing the same it must be of a confidential character, and so regarded, at least by the client, at the time, and must relate to a matter which is in its nature private and properly the subject of confidential disclosure.

"Where an attorney serves merely as a scrivener to draft and put in legal form a contract for the transfer of title to real estate, communications concerning the drafting of the contract or the contract itself are not privileged." (Syl. 2 and 3. See, also, *Hutton v. Hutton*, 184 Kan. 560, 337 P. 2d 635.)

It is contended that evidence varying the terms of the written contract should have been excluded as a violation of the parole evidence rule. Appellants state:

"As previously noted, the parties' written contract provided for the exchange of approximately 221 acres located in section 1 for the Cubana Apartments. Appellees' amendment at the close of their evidence would vary this written agreement by including land located in section 2 and varying the number of acres from approximately 221 acres to 'the particular piece of ground that was pointed out to him' which was to be exchanged for the Cubana Apartments."

The evidence clearly disclosed that there had been a mutual mistake in the description of the land. The description covered only the land in section 1. There was also approximately 27 acres of adjoining land in section 2 which was intended to be conveyed. When this situation was called to the attention of a court of equity it was its responsibility to correct the mutual mistake before decreeing specific performance. The addition of the 27 acres from section 2 resulted in appellants' benefit. They are hardly in position to claim prejudicial error.

The appellants contend that there was no substantial evidence to support the trial court's findings of fact and conclusions of law; that appellants' motion for directed verdict should have been sustained, and that there was no substantial evidence to support the judgment.

The reasonable limits of a judicial opinion will not permit a review of all the findings and the evidence to support them.

Appellants' specific complaint is, first, it was impossible for appellees to perform their obligations under the contract because of acreage shortage and second, appellees made no tender of performance.

The court found the facts and concluded:

"The court concludes as a matter of law that there was error in the legal description of the plaintiffs' land in the contract and also in the stipulation

entered into between the parties prior to trial; that said error consisted of 27 acres of said land being situated in a different Section than the balance of said land.

". . . the parties were dealing at arm's length; that the defendants had pointed out to them all of said land, and that, whether or not it was all lying in one Section or two Sections, the defendants knew what they were purchasing, and that the failure of the proper description did not void the contract.

". . . if the error did exist it was the fault of the defendants in that the defendants had the contract prepared by the attorney, Walter McGinnis.

". . . the motion of the plaintiffs at the conclusion of the evidence to amend to conform to said evidence, which the court sustained, any error as to the description of the property or the amount of acreage was corrected at the time of trial.

". . . the plaintiffs, after ascertaining that the defendants did not intend to comply with their part of the contract, were relieved of further obligating themselves in obtaining release of the mortgages, extending their abstract of title, or having the survey of their land completed. (The law will not require one to do an act which is useless.)

". . . that there is no fault on the part of the plaintiffs; that they did everything reasonable and legal that they could do to comply with the terms of the contract, but, to the contrary, the defendants failed to comply therewith, and all the fault lies with the defendants."

There was substantial competent evidence to support the basic findings and conclusions material to the determination of the issues.

The appellants' chief complaint stems from their error in construing the words approximately 221 acres more or less to be words of guarantee rather than description.

We have carefully considered the record, reviewed the contentions of appellants and find no trial errors which would justify the granting of a new trial.

Judgment is affirmed.

APPROVED BY THE COURT.

WERTZ, J., not participating.