No. 44,585

LILLIAN HUBBARD PICKERING, Executrix of the Estate of C. W. Pickering, Deceased, and LILLIAN HUBBARD PICKERING, *Appellants,* v. ZOE J. HOLLABAUGH, JR., Executor of the Estate of Zoe J. Hollabaugh, Deceased, and MARY L. HOLLABAUGH, *Appellees.*

(420 P. 2d 1012)

Opinion filed December 10, 1966.

*A. D. Weiskirch,* of Wichita, argued the cause, and *F. C. McMaster* and *Stanford J. Smith,* both of Wichita, were with him on the briefs for the appellants.

*William R. Smith* and *H. E. Jones,* both of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, Wm. P. Thompson, Jerome E. Jones, Robert J. Roth,* and *Robert J. O'Connor,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

KAUL, J.: This is an action to enforce specific performance of a contract for the exchange of real estate. The controversy stems from a dispute between the appellants-plaintiffs below (hereinafter referred to as Pickerings) and the appellees-defendants below (hereinafter referred to as Hollabaughs) as to the ability of the Pickerings to perform the contract according to its terms.

The contract in question was entered into on October 11, 1961, under the terms of which Hollabaughs agreed to convey certain real property in the City of Wichita, consisting of the Cubana Apartment Building, to the Pickerings in exchange for property owned by the Pickerings in Pottawatomie County adjacent to Tuttle Creek Dam and Reservoir and described in the contract as consisting of 221 acres, more or less.

This is the second appeal in this action. The first appeal was entitled *Pickering v. Hollabaugh,* 194 Kan. 804, 401 P. 2d 891, and the opinion was filed May 15, 1965. The decision in the previous appeal affirmed a judgment of the district court ordering specific performance of the contract between the parties.

Prior to the first trial the parties entered into a stipulation, the material parts of which will be considered later. In the first appeal Hollabaughs contended the court erred in overruling their motion for judgment on the pleadings and stipulation. Hollabaughs argued the stipulation established that Pickerings were not in position to deliver the acreage covered by the contract. Now Hollabaughs claim that Pickerings are not in a position to perform because of the encumbrance of an easement for a 40 foot right-of-way in favor of one B. J. Jones. This second round in the controversy developed in the lower court through a series of motions, countermotions, hearings and rehearings.

Subsequent to the decision of this court in the first appeal, Pickerings filed a motion in the district court asking for various orders directing the performance of the contract and tendering an abstract of title brought up to date and a warranty deed conveying Pickerings' property. Next Hollabaughs filed a motion for judgment dismissing Pickerings' claim and assessing costs of the action to Pickerings. In support of their motion Hollabaughs alleged that the contract was impossible of performance because Pickerings were unable to convey merchantable title to the property as required by the contract. Hollabaughs requested a hearing before the district court on their motion and submitted title opinions prepared by their attorney, Lester Morris, in which various title requirements were set out.

The only requirement in contention here concerned a right-of-way agreement between Pickerings and one B. J. Jones. In substance the agreement granted Jones a perpetual easement and right-of-way 40 feet wide across the Pickerings' property from a point on any public road or highway adjacent to Pickerings' property to the property of Jones, previously conveyed to him by the Pickerings. The agreement further provided that if no public road or highway was upon or adjacent to the Pickerings' property, then the Jones right-of-way was to be to any point of access of the Pickerings whether the same should be a public or private access way. Mr. Morris found the Jones easement to be a *burden* on the property

affecting the marketability of the title, and required a quitclaim deed from B. J. Jones and wife.

All other requirements of Mr. Morris were either waived or cured.

On September 29, 1965, the district court in a memorandum opinion found that Pickerings' motion should be sustained and that the Hollabaughs' motion for judgment should be overruled. Subsequently, on October 4, 1965, Hollabaughs moved for a rehearing on their motion for judgment. A rehearing was granted and after hearing arguments the district court on October 19, 1965, found that it had erred in its decision of September 29, 1965, and the previous judgment was set aside. The district court further ordered the Pickerings to furnish merchantable title to their real estate and granted them sixty days to clear title to their property.

Subsequently Pickerings filed a motion to vacate and set aside the district court's order of October 19, 1965, and offered to make an abatement in price for access easement. Pickerings further asked the district court to enter a final order in the matters of specific performance and accounting. A hearing was held on November 4, 1965, and the district court overruled Pickerings' motion and entered final judgment for Hollabaughs, assessed costs to the Pickerings and directed that funds on deposit with the clerk of the court be disbursed to Hollabaughs within thirty days after judgment was rendered.

The court found that the perpetual flowage easement to the United States Government did not render Pickerings' title unmerchantable but that the perpetual easement and right-of-way granted to B. J. Jones was not waived by Hollabaughs and did render the title unmerchantable.

Thereafter Pickerings filed a motion for a new trial and a motion for judgment on the grounds that the previous judgment rendered by the district court in favor of Pickerings, decreeing specific performance, as affirmed by this court in *Pickering v. Hollabaugh,* supra, was a final judgment for Pickerings on the question of specific performance and is res judicata as to all matters raised and as to all matters that could and should have been raised in the trial of this cause.

Pickerings further alleged that the last decision of the district court was procured by counsel for Hollabaughs, stating in oral argument to the district court that the matter of the access easement was not known to them until after the examination of the title

opinion of attorney Morris, when, in truth and in fact, it was known to them before the original trial was had by reason of the inclusion thereof in the legal description set out in the stipulation of the parties prior to the original trial.

The district court overruled Pickerings' motion for a new trial and this appeal followed.

The controversy boils down to the issue of whether or not Hollabaughs should have claimed the Jones easement rendered title unmerchantable as a further reason for nonperformance in the first instance and, having failed to do so, may they later, after an adverse adjudication and affirmance on appeal, change their position and substitute the Jones easement as a reason for Pickerings' inability to perform.

Hollabaughs claim that the issue concerning the Jones easement could not have been resolved in the first trial because they were not informed as to the details of the easement. Their position in this regard is not supported by the record.

Prior to the first trial, on January 17, 1964, the parties stipulated to certain facts. In paragraph 2 of the stipulation the following is found:

"Proper legal description of the land owned by Pickering, in Section 1, Township 9 South, Range 7 East, Pottawatomie County, is as follows:"

There is then set out a detailed description in metes and bounds of the Pickering land ending as follows:

". . . subject to a perpetual flowage easement over that part of the above land lying below elevation 1140 (m. s. l.); and subject to a 40 foot right of way granted to B. J. Jones."

Pickerings state in their brief, and it is not denied by Hollabaughs, that the stipulation was prepared in Hollabaughs' attorney's office and forwarded to Pickerings' attorney for execution.

The stipulation clearly discloses that Hollabaughs were well-aware that a proper legal description of the Pickering land described it as being subject to the flowage easement as well as the Jones easement for a right-of-way. If they considered either easement to have rendered title unmerchantable they could have stated so in the beginning rather than making their stand solely on the claim of acreage shortage.

At the conclusion of the first trial the district court made detailed findings of fact and conclusions of law which were held by this court

on appeal to have been supported by substantial competent evidence. The district court found that Hollabaughs, with their real estate agent, and C. W. Pickering walked over the entire tract of land and that Pickering pointed out the boundaries and corners and further that Pickerings extended their abstract to about December 11, 1961, and made arrangements to satisfy the mortgages against the land. The court found generally for the Pickerings and reserved jurisdiction for the purpose of an accounting and for carrying out the terms of the agreement.

An analysis of the stipulation and the findings and conclusions of the district court indicates that all matters in the legal description stipulated to by the parties were before the court in the original trial, including the acreage question, the flowage easement and the Jones easement. Issues in connection therewith could have been resolved in the first trial if the court had been called upon to do so. Pickerings argue, therefore, that Hollabaughs were estopped by the rule of res judicata from later asserting the Jones easement as a defense. The district court rejected Pickerings' contention. It is our view, however, that under the existing status of the proceedings when the decision was made from which this appeal was taken, another principle of law should have been applied.

The original trial was had on January 17, 1964; whether or not Hollabaughs could have obtained a complete examination of title prior to that time is not clearly shown in the record. It is obvious, however, that if Hollabaughs considered Pickerings' title to be rendered unmerchantable by reason of the Jones easement the contention could have been asserted in the first trial.

In the first trial Hollabaughs gave as their reason for nonperformance inability to perform on the part of Pickerings because of acreage shortage. In their motion presented to the district court on October 15, 1965, they changed their position claiming Pickerings were unable to perform because their title was unmerchantable due to encumbrance by the Jones easement. We believe the district court erred in permitting Hollabaughs to change their position at this late stage in the litigation. The general rule is stated in 28 Am. Jur. 2d, Estoppel and Waiver, § 72, p. 703:

"It is a broad general rule that a party who has given a definite reason for his conduct and decision about a matter in controversy cannot, after litigation has begun, change his ground and put his conduct upon another and a different consideration. . . ."

See, also, 31 C. J. S., Estoppel, § 116, p. 607.

The principle above enunciated has been set out and adhered to in this jurisdiction in a long line of decisions (*Redinger v. Jones,* 68 Kan. 627, 75 Pac. 997; *Sandefur v. Hines,* 69 Kan. 168, 76 Pac. 444; *Stanton v. Barnes,* 72 Kan. 541, 84 Pac. 116; *Braniff v. Baier,* 101 Kan. 117, 165 Pac. 816; *Heidner v. Hewitt Chevrolet Co.,* 166 Kan. 11, 199 P. 2d 481, and *Russell v. Ferrell,* 181 Kan. 259, 311 P. 2d 347).

After putting their refusal to complete the sale upon the grounds of acreage shortage alone, when, they could have included the same claim in regard to the Jones easement as they later urged, Hollabaughs became estopped from changing their position. In applying the same principle to a party's belated attempt to change position, in *Railway Co. v. McCarthy,* 96 U. S. 258, 24 L. Ed. 693, it was aptly stated:

". . . He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law. . . ." (pp. 267, 268.)

Similar language was used by this court in applying the principle in the recent case of *Hiniger v. Judy,* 194 Kan. 155, 398 P. 2d 305, where it was stated:

"It has been held where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct on another and different consideration. He is not permitted thus to mend his hold; he is estopped from doing it by a settled principle of law. (citing cases.)" (p. 166.)

We agree with Hollabaughs that ordinarily a perpetual easement, such as that conveyed to Jones here, constitutes an encumbrance upon the property and renders title unmerchantable; but the issue of whether or not the easement was waived or whether the title agreed upon and bargained for was subject to each easement should have been raised and determined in the original trial.

The facts relating to the acreage shortage dispute, the perpetual flowage easement, and the existence of the Jones right-of-way were all encompassed in the stipulated description of the Pickering land. We believe that any and all issues pertaining to those matters should have been litigated and disposed of in the previous trial.

The judgment of the district court is reversed and the cause remanded with directions to proceed in accordance with the previous judgment of the district court entered on May 4, 1964, and affirmed by this court on May 15, 1965, in our decision in *Pickering v. Hollabaugh,* supra.

It is so ordered.