No. 46,222

ERNEST A. MAXWELL and ROWENA MAXWELL, *Appellees,* v. GEORGE V. REDD, *Appellant.*

(496 P. 2d 1320)

Opinion filed May 6, 1972.

*Frank S. Hodge,* of Hodge, Reynods, Smith, Peirce and Forker, of Hutchinson, argued the cause, and *Dennis O. Smith,* of the same firm, was with him on the brief for the appellant.

*William Y Chalfant,* of Hutchinson, argued the cause, and *H. R. Branine,* of Hutchinson, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This action was brought by plaintiffs-appellees to recover damages from defendant-appellant on the theory that defendant breached covenants of title in a deed for conveyance to plaintiffs. The controversy arose when it was discovered, after an exchange of one-half quarter sections of land, that defendant did not own the one-half of the quarter section which he conveyed but only 76.5 acres thereof, which was described in metes and bounds. The contract and deeds effecting the exchange were executed on January 10, 1968. In their brief plaintiffs state that upon discovery

that defendant owned only part of the tract involved they immediately requested that defendant either restore the parties to their original position by mutual reconveyances of the exchanged lands, or that the balance of the tract be acquired at defendant's expense, or that defendant pay damages to plaintiffs for the loss sustained. Defendant refused and plaintiffs filed suit.

In his answer to plaintiffs' petition defendant admitted that he owned only the metes and bounds description set out in plaintiffs' petition, but alleged that the facts were either known to plaintiffs or in the exercise of due care should have been known to them and that, in spite of such knowledge or access thereto, plaintiffs proceeded with the trade. Defendant further alleged that the market value of the land received by plaintiffs was in excess of the market value of the land received by him; that the parties exchanged land in gross; and that the exact acreage was of no consequence. Requests for admissions by defendant were filed, and on October 31, 1969, a pretrial conference was had. The pretrial order reflects facts agreed upon as follows:

"(2) Facts agreed upon by the parties: That plaintiffs and defendant are Reno county residents; that in the spring of 1968, plaintiffs deeded to defendant the South Half of the Southwest Quarter of section 17, Township 24 South, Range 7 West, in Reno county, Kansas; and in return, defendant deeded to plaintiffs the West Half of the Southeast Quarter of section 30, Township 23 South, Range 6 West, in Reno county, Kansas; that subsequently it was ascertained the defendant did not have merchantable title to all of the land he deeded to plaintiffs."

Plaintiffs filed a motion for summary judgment on the issue of liability upon which the trial court ruled as follows:

"THIS matter comes before the court upon the plaintiffs' motion for summary judgment with respect to the question of the defendant's liability to plaintiffs only. Case files to date, and K. S. A. 60-236, are made a part of this memorandum opinion by reference. Arguments and admissions are presented by counsel.

"From the pleadings it is conceded that on January 10, 1968, plaintiffs entered into a written contract with the defendant whereby plaintiffs would convey by warranty deed the S ½ of the SW ¼ of 17-24-6, in Reno County, Kansas, to said defendant, and in turn, said defendant would convey by warranty deed to plaintiffs the W ½ of the SE ¼ of 30-23-6, in Reno County, Kansas; that said warranty deeds were so given; that subsequently it was discovered defendant did not have good and merchantable title to all of the realty described in said deed given plaintiffs but only owned that portion as set forth in paragraph 5 of plaintiffs' petition.

"In addition to the foregoing, the court finds that there was a partial failure of title and a breach of warranty with respect to the deed given plaintiffs by the defendant.

"Accordingly, partial summary judgment in favor of plaintiffs and against defendant with reference to all questions of liability only is hereby granted.

"This matter will be set for trial during the January 1970 term of court with reference to the matters of damages, if any."

A jury was waived and the issue of damages was tried to the court on June 10, 1970.

The trial court filed a memorandum opinion which we quote in part as follows:

"A point to be remembered: had the defendant owned merchantable title to all of the West Half of the Southeast Quarter of Section 30, Township 23 South, Range 6 West, in Reno County, Kansas, then whether or not same contained 80 acres or 76.5 acres would have been immaterial. However, the contract and deed called for conveyance by defendant to plaintiffs of the above described land to which defendant only had partial title.

"From the evidence presented the court finds: that as of January 10, 1968, the value of the West Half of the Southeast Quarter of Section 30, Township 23 South, Range 6 West, in Reno County, Kansas, was $365.00 per acre; that according to the government survey said West Half of the Southeast Quarter of Section 30, Township 23 South, Range 6 West, in Reno County, Kansas, consists of 80 acres; and that there was a shortage of 3.5 acres in the quantity of land as described in the defendant's deed of conveyance to the plaintiffs and the amount to which the defendant actually had merchantable title.

"Accordingly, judgment is given plaintiffs against the defendant in the sum of $1277.50, (365 per acre × 3.5 acres), with interest at 8% per annum from January 10, 1968. Costs are assessed against the defendant."

Judgment was entered in accord with the trial court's opinion and this appeal followed.

On appeal, as in the trial court, the main thrust of defendant's argument is that the parties dealt in gross rather than on an acreage basis, and thus plaintiffs are not entitled to damages for a 3.5 deficiency in acreage which defendant says is inconsequential.

In his brief defendant states his position in these words:

". . . Where it [a sale] is by the tract, the courts have, in the absence of fraud, either refused altogether to grant relief for a mistake, even though the mistake results in a large excess of deficiency, or have limited relief to situations where the deficiency is so great as to warrant the conclusion that the parties would not have contracted had the truth been known, or where the extent of the discrepancy warrants the presumption of fraud." (citing 1 A. L. R. 2d, Anno. § 6, p. 18.)

Defendant cites a number of our cases holding in accord with his position. (*Pickering v. Hollabaugh,* 194 Kan. 804, 401 P. 2d

891; *Martin v. Ott,* 114 Kan. 419, 219 Pac. 275; and *Maffet v. Schaar,* 89 Kan. 413, 131 Pac. 589.) The cases mentioned demonstrate the distinction between a sale on an acreage basis, as in *Maffet,* and a sale in gross, as described in the *Martin* case, or an exchange in gross, as described in the *Pickering* case. The law is succinctly summed up by Justice Dawson speaking for the court in *Martin v. Ott,* supra:

"The law on the subject is really simple. Where a farm is sold as a repre-sented number of acres, the vendor is liable for a deficiency in the acreage. (*Doner v. Deal,* 104 Kan. 793, 180 Pac. 766.) Where a farm is sold in gross, that is, for a lump sum regardless of the acreage, the vendor is not liable for any deficiency in the acreage except for fraud (*Kowing v. Reynolds,* 113 Kan. 317, 214 Pac. 427), which exception raises a question of fact, and in this case that question has been fairly determined against the plaintiff. . . ." (p. 424.)

In the *Maffet, Martin* and *Pickering* cases, although there was a deficiency in acreage, the vendors in each instance owned all of the property described in the respective conveyances. In *Maffet* the total consideration was arrived at on a price per acre basis, and recovery was predicated on the fact that the vendee had contracted on the basis of a specified number of acres which did not in fact exist within the description. In *Martin* and *Pickering* the transactions were in gross, and since the vendors in each in-stance were seized of all the property described, recovery was denied vendees in each case—the court holding that the recital of acreage in each case was for identification purposes and not a warranty of acreage. None of the cases mentioned were actions brought for a breach of any warranty of title.

Obviously, the transaction in the instant case was an exchange in gross. However, the trouble with defendant's position is that the rule dealing with acreage deficiencies in the case of a transfer in gross presupposes that the sale or exchange in gross transfers to the purchaser all of the description contracted for. As we held in *Martin* a party contracting on an acreage basis for a specified tract at an agreed price per acre is entitled to recover the difference between the purchase price and the actual acreage times the price per acre. It is equally obvious that, in the absence of fraud or mutual mistake of fact, a party who exchanges or buys in gross by described boundaries or government survey rather than on an acreage basis has no claim for damages if he receives a good title to the entire tract described, notwithstanding it contains less acre-age than expected by him. So in the instant case if plaintiffs, as

purchasers of the west half of the quarter section in question, had discovered it contained less than eighty acres by reason of a correction line or was a short eighty because of some other similar reason, they could not demand a proportionate refund of the purchase price for a sale in gross as long as they received title to the entire west half of the southeast quarter. Instead of the west half of the southeast described in the deed, and for which they bargained, plaintiffs received only a tract 78 rods by 160 rods by 75 rods by 160 rods situated in the west half of the southeast quarter. The paramount title of the remainder of the west half of the quarter section was admitted to be in parties other than defendant. In the deed to plaintiffs, defendant, together with the usual warranties, specifically covenanted that—

". . . he is lawfully seized in his own right, of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted and described premises. . . ."

When the defendant refused to restore the parties by mutual reconveyances or to pay plaintiffs damages for their loss this action was instituted to recover damages for breach of covenant of title, or more specifically the covenant of seisin.

The guarantee of a covenant of seisin is that the grantor, at the time of the conveyance, was lawfully seized of a good, absolute and indefeasible estate of inheritance, in fee simple, and had power to convey the same. Where a grantor did not have title to a part of the land conveyed there was a breach of the covenant. (20 Am. Jur. 2d, Covenants, Conditions, Etc., §§ 73 and 75, pp. 638, 639; 6 Powell on Real Property, Covenant for title—Seisin, § 905, pp. 268.13-17; 7 Thompson on Real Property [1962 Replacement], Covenants of seisin, § 3178, pp. 238-243; *Hilliker v. Rueger,* 228 N. Y. 11, 126 N. E. 266; and *Bolinger v. Brake,* 57 Kan. 663, 47 Pac. 537.

The ordinary remedy for breach of a covenant of title in a conveyance of land is an action at law for damages. (20 Am. Jur. 2d, Covenants, Conditions, Etc., § 110, p. 667.)

The applicable rule is stated in these terms in 7 Thompson on Real Property [1962 Replacement], Covenants in Deeds, § 3180, p. 248:

". . . The grantee may recover for a breach of a covenant of seisin though the seisin fails as to a part only of the land conveyed by a deed. . . .

"If at the time of the conveyance the grantee finds the land in possession of one claiming paramount title, the covenant of seisin is broken. Proof of eviction is not necessary in order to sustain an action for breach of covenant

of seisin; it is sufficient to negative the covenant and prove that the grantor did not have title to the land at the time of the conveyance." (p. 249.)

An action for damages is recognized as the remedy afforded a grantee for breach of a covenant of seisin in this state. (*Wilder v. Wilhite,* 190 Kan. 564, 376 p. 2d 797; *Bolinger v. Brake,* 57 Kan. 663, 47 Pac. 537; *Scott v. Morning,* 23 Kan. * 253; *Scantlin v. Allison,* 12 Kan. * 85; *M'Kee v. Bain,* 11 Kan. * 569; and *Dale v. Shively,* 8 Kan. * 276.) The time limitation in which such an action on a covenant of seisin may be brought is specifically prescribed in K. S. A. 1971 Supp. 60-511(2).

Defendant argues that our holding in the case of *Brewer v. Schammerhorn,* 183 Kan. 739, 332 P. 2d 526, requires that plaintiffs here must have relied upon a specified acreage in order to recover. The *Brewer* case involved conveyances of tracts from a "long" quarter section which, as a whole, contained slightly more than 163½ acres. The original owner first conveyed the "North 80 acres *precisely*" thus there remained the South 83½ acres. The owner then conveyed the remainder of the quarter section, describing it as the south one-half, together with one-half of another quarter section, included with the descriptions was the phrase "*containing 160 acres, more or less.*" The successors in title to the original grantees of the long quarter became involved in a boundary dispute involving the 3.5 acres which gave rise to the litigation. Parol evidence was admitted to explain the ambiguity. On appeal this court, relying heavily on the presumption that the grantor intended to convey everything remaining, held that the deed conveying the south half took with it the extra acreage not included in the "precise North 80 acres" previously conveyed.

The *Brewer* case is not applicable to the issue here. It involved no breach of covenant and there was no question raised concerning a deficiency of title to the property conveyed. The controversy there involved ownership of land apparently not conveyed and the construction of an ambiguous description. There is no evidence here, such as in the *Brewer* case, which indicated an intention of the parties contrary to what was expressed in the deed. The only evidence bearing on the subject was the testimony of plaintiff Ernest A. Maxwell who was called as a witness by defendant. Mr. Maxwell testified that he was not familiar with the boundaries of the tract prior to the conveyance; that he was trading for the west half of the quarter section, and entered into the exchange on that

basis; that he was bargaining for and would receive such tract, which was what the contract called for. As narrated in the record, he testified:

". . . [T]hat there is a hedge row in the land, but it is not a boundary line; that driving by the land you would naturally think that it was a boundary line; that he traded for the W/2 of that quarter section: . . ."

Defendant makes no claim that the hedge row constituted an agreed boundary line, nor was there any evidence offered to that effect. This action was neither pleaded nor tried as a boundary line dispute but as an action for breach of warranty of title and defended on the theory of an exchange of gross.

In view of what has been said the order of the trial court granting judgment to plaintiffs on the issue of liability must be affirmed.

We turn next to defendant's complaints concerning the measure of damages adopted by the trial court.

The trial court found as follows:

". . . [T]he measure of damages for the partial breach of a covenant of warranty in a deed is the relative value which the part of the real estate as to which the title failed bears to the purchase price or consideration of the whole estate. The parties are further instructed that upon the partial breach of a convenant of title, and where the land to which the title has failed in part was conveyed in exchange for other land without a stipulated or agreed value, the plaintiffs' recovery should be the proportionate part of the value of such other land rather than the value of the land to which title failed. For example, if the value of the portion of the land to which title failed represented 1/20th of the whole value of the entire tract conveyed to the plaintiffs, then the plaintiffs would be entitled to recover a sum equal to 1/20ths of the value of the land conveyed to the defendant in exchange."

The trial court then proceeded to find from the evidence presented that the value per acre of the west one-half deeded to plaintiffs was $365.00 which was multiplied by 3.5, resulting in the judgment of $1,277.50. There was no variance in the per acre value of the 3.5 acres.

There was evidence to support the findings and we believe the proper measure of damages was applied with respect to a partial breach of the covenant of seisin. The applicable rule is set forth in 20 Am. Jur. 2d, Covenants, Conditions, Etc., § 144, p. 701:

". . . Thus, in the case of a partial breach of a covenant of warranty by reason of a failure of title to a portion of the estate conveyed resulting in eviction from that portion of the premises, the measure of damages is the relative value which the part as to which the title failed bears to the purchase price or consideration of the whole estate. A similar rule applies where the

action is based upon the covenant of seisin or right to convey; in such case the covenantee recovers pro tanto only. . . ." (pp. 702-703.)

See, also, 21 C. J. S., Covenants, § 142 (2), p. 1012; 61 A. L. R., Anno., p. 95 [See Vol. 4 (Perm. Ed.) Supplemental Decisions, p. 190]; and 100 A. L. R., Anno. p. 1200.

The rule stated is followed in this jurisdiction. In the early case of *Dale v. Shively*, 8 Kan. * 276, the court dealt specifically with a breach of covenant of seisin. At page * 279 we find this statement:

"As to the measure of damages: The consideration money, with interest, is the extent to which the damages can, under any circumstances, be recovered upon this covenant, upon a total breach; but where there is a partial breach, the grantee may recover *pro tanto*. . . ."

Although there was testimony that the lands exchanged were of approximately equal value, notwithstanding the deficiency of 3.5 acres in the tract deeded them, plaintiffs were entitled to the benefit of their bargain and they bargained for the land described in the deed. This was not an action for the breach of a contract to exchange land. The contract had long since been performed. The lands had been described, the deeds executed and delivered and possession transferred, all in accord with the provisions of the contract. When the deficiency of defendant's title was discovered there was no remedy left to plaintiffs except an action on the covenants of the deed.

We have carefully examined authorities cited by defendant on the measure of damages and the application thereof. The cases cited by defendant deal with the measure of damages as applied to actions for breach of contract or with actions where the deficiency was a shortage of the acreage represented to be within the land described, not with a situation where the grantor did not own what was conveyed as in the instant case.

Finally, defendant complains concerning the trial court's allowance of interest at eight percent per annum from the date of the contract, January 10, 1968. Defendant makes a two-pronged attack on the trial court's ruling. Defendant claims first that damages were unliquidated and totally unascertainable prior to trial and thus no interest prior to judgment should have been allowed. Second, defendant argues that if interest prior to judgment is allowed then the rate can only be six percent for that period. We believe both contentions have merit. With respect to defendant's second

contention, K. S. A. 16-201 provides in substance that the legal rate of interest shall be six percent per annum, when no other interest is agreed upon. Prior to July 1969, K. S. A. 16-204 provided that all judgments shall bear interest at the rate of six percent per annum from the date rendered. Effective July 1, 1969, K. S. A. 16-204 [now 1971 Supp], was amended to provide for eight percent. We have held the amendment to have only prospective application. (See *Bartlett v. Heersche*, 209 Kan. 369, 496 P. 2d 1314.) K. S. A. 16-201 was not amended, thus in no event could more than six percent per annum be allowed prior to the date of judgment on June 10, 1970.

Turning next to defendant's argument on his first point with respect to the allowance of interest. We are cognizant that the basic measure of damages generally adopted for a breach of covenants of warranty in a suit by grantee against grantor, is the value of the land at the time of the conveyance, which is the consideration agreed upon by the parties, with interest and costs. (7 Thompson on Real Property, [1962 Replacement], Covenants in Deeds, § 3182, pp. 255-256; and *Stebbins v. Wolf*, 33 Kan. 765, 7 Pac. 542.) The transaction in the instant case, however, was an exchange of lands. There was no value or consideration fixed by the parties in either the contract or deeds; neither is there any evidence that the parties at any time during negotiations fixed a value for the lands either on a lump sum or per acre basis. In other words, the claim of plaintiffs was not only unliquidated but as a practical matter it was unascertainable prior to determination at trial.

Under the particular facts and circumstances appearing in the instant case, we hold that the allowance of interest from the date of the deed, January 10, 1968, to the date of the judgment, June 10, 1970, should be deleted from the judgment which is in all respects affirmed.

FONTRON, J., concurs in the result.